## LYMAN *et al.* v. CESSFORD *et al.*

1. FRAUDULENT CONVEYANCES: SUBSEQUENT INDEBTEDNESS. A deed valid and *bona fide* when made, cannot be rendered fraudulent by the subsequent embarrassment of the grantor; and a voluntary conveyance, in the absence of a fraudulent intent, is good against subsequent creditors.

2. PRESUMPTIONS AGAINST FRAUD. Fraud will not be imputed, when the facts upon which it is predicated may consist with honesty and purity of intention.

3. FRAUD AS TO SUBSEQUENT CREDITORS. To render a voluntary conveyance fraudulent, as to subsequent creditors, it must be made to appear, either by positive evidence or by facts which justify the inference, that it was executed with a fraudulent intent on the part of the grantor.

4. FRAUD: REPRESENTATIONS TO THE PUBLIC. To subject the property of the wife to the satisfaction of the debts of the husband, for the reason that he has held himself out to the world as the real owner, and the wife has contributed to the fraud thus practised, it must be made to appear that the representations were relied upon, that the assumption of ownership was of a character calculated to mislead and deceive the public, or that the complaining creditor, at least, was deceived and misled.

5. EVIDENCE OF FRAUD. Evidence offered to establish a fraudulent intent in the execution of a conveyance, considered and discussed.

*Appeal from Cedar District Court.*

THURSDAY, OCTOBER 16.

BILL in equity to set aside certain conveyances upon the ground that they were made to defraud creditors. Decree for complainants, and respondents appeal.

*Piatt & Spicer* for the appellants.

I. At voluntary conveyance executed by a grantor, while he is not in debt, and without any fraudulent intention, is valid as against subsequent creditors. *Benton* v. *Jones,* 8 Conn., 185; *How* v. *More,* 4 Greenl., 195; *Parker* v. *Proctor,* 9 Mass., 390; *Sexton* v. *Wheaton,* 8 Wheat., 229; *Hinds* v. *Longworth,* 11 Wheat., 199; *Davis* v. *Herrick,* 37 Me., 397; *Martin* v. *Allen,* 9 Humph., 591; *Bennett* v. *Bedford Bank,* 11 Mass., 423; *Howard* v. *Williams,* 1 Baily, 575.

II. A deed valid when executed, cannot be rendered fraudulent by the subsequent embarrassment of the grantor. *Brockett* v. *Wait,* 4 Verm., 389. There must be a fraudulent intent. *Styles* v. *Lightfoot,* 26 Ala., 443; *Davis* v. *Herrick,* 37 Me., 397; *Mansfield* v. *Watson,* 2 Iowa, 111; *Fifield* v. *Gaston,* 12 Iowa, 218.

*Clarke & Davis* for the appellee.

I. A voluntary conveyance to a wife by a husband not indebted at the time, but with a view to future indebtedness, is void. 1 Story Eq. Jur., § 342; *Reade* v. *Livingston,* 3 Johns. Ch., 492; *Parkman* v. *Welch,* 19 Pick., 237; *Russell* v. *Stinson,* 3 Hey, 1; *Harrison* v. *Kramer et al.,* 3 Iowa, 557; *Felzon* v. *Filzer,* 2 Ala., 477.

II. In this case the husband held himself out as the owner of the premises, and his wife contributed to the deception, and thereby charged herself with the consequences of his conduct. *Sexton* v. *Wheaton,* 8 Wheat., 229; *Hungerford* v. *Earle,* 2 Verm., 261; *Mannice* v. *The New York Dry Dock Company,* 3 Ed. Ch., 123.

WRIGHT, J.—On the 23d of March, 1860, William Cessford, Jr., by contract with the School Fund Commissioner, was the equitable owner of the land in controversy, some part of the purchase money remaining unpaid. On that day he conveyed to his father, who immediately made a

Lyman v. Cessford.

title to the said wife. She at once moved on to the land with her children. These deeds were filed for record, June 29, 1860. The object in making them, was to secure a home for the family, and though the consideration of $5,000 is named in each deed, nothing was actually paid; the land (in the language of the answer) being "given to the wife, so that in case of his (the husband's) death, or accident or misfortune, she would be secure in a home and maintenance." At this time the husband was entirely free from debt, but on the 4th of May, 1860, he contracted a debt to complainants, upon which they recovered a judgment, and based thereon, and the debtor's insolvency, filed this bill to subject these lands to its payment.

It will be observed that complainant's debt was contracted after these conveyances were made, and all legal title to the lands had passed from the husband. Counsel for appellees admit that the conveyance (for we shall speak of the two as one), though voluntary, will be upheld as against them, unless they have established one of these propositions: 1. That it was made with a fraudulent view to future indebtedness. 2. That the husband afterward held himself out to the world as such owner. 3. That the wife contributed to the alleged fraud so far as to be charged with the consequences of her conduct.

That a deed valid and *bona fide*, when made, cannot be rendered fraudulent by the subsequent embarrassments of the grantor, and that a voluntary conveyance, in the absence of fraudulent intent, is good against subsequent creditors, is, as already suggested, not controverted by counsel. Starting with this then, as a well-settled and admitted principle, our inquiry is directed to three propositions, one or all of which it is claimed the testimony sustains. Remarking that we should hesitate before admitting the correctness of the exceptions, without modification or explanation, regarding some of them as stated too broadly at least and

liable to mislead, we neverthless conclude, giving them all the force claimed, that the testimony does not sustain either, and that as a consequence the Court below erred in granting the prayer of the bill.

That the husband had any intention, at the time of making this conveyance, to contract this, or any other debt; that he made it with a view to such or any indebtedness, there is no testimony whatever. There is nothing in this respect attending the conveyance, or the incurring of the indebtedness, which does not comport with the utmost honesty of purpose. It is true that he did in March contemplate changing his business, but there is no evidence that he expected to incur any debt, and if he did, he then had some other property. And fraud never ought to be or will be imputed, when the facts upon which it is predicated, may consist with honesty and purity of intention. *Stiles* v. *Lightfoot*, 26 Ala., 443, and cases there cited. And when it is said that such conveyances will be set aside, if made with a view to future indebtedness, it is not meant that the simple fact of a subsequent indebtedness is sufficient to make it fraudulent. There must exist at the time on the part of the grantor a fraudulent view. Various methods may be resorted to, in order to establish the fraudulent purpose or intent, but until it is established either by positive proof or the exhibition of such facts as justify the inference of its actual existence, the conveyance though voluntary, will not be set aside at the instance of a subsequent creditor. It is true that a debt might be contracted so immediately after such a conveyance, of such an amount, and under such circumstances, as, without further proof, to lead to the conclusion that the fraudulent view existed at the time, and that the transfer was made to cheat and defraud such subsequent creditors. Nothing of this kind appears in the present instance, however. All proof of a fraudulent intent is wanting. There is nothing tending to

, show the existence of a secret trust. The simple facts are that the husband, pursuant to a purpose, formed several years prior, and often spoken of, voluntarily settled these lands upon his wife, as her own, and for the support of the family, when he was entirely free from debt, and when he, as far as shown, had no intention of contracting any indebtedness.

The second and third proposition or exceptions may be considered together. When it is said that if the husband, after the conveyance, holds himself out to the world as such owner, the transaction may be impeached, and the deed set aside, it is not meant that a mere representation of his, that he owns the property, will subject it to the creditor's debt. To say no more, we remark, that it should at least appear that these representations were relied upon, and that the creditor had a right to rely upon them; that such assumption of ownership was of such a character as was calculated to deceive and mislead the public, or that they did in fact mislead and deceive the complaining creditor, and that the wife either actively, or passively, contributed to the deception, and the successful perpetration of the fraud.

In this case it will be remembered, that the legal title never was in the husband. The record did not show that he had any right to this land. As in the case of *Sexton* v. *Wheaton*, 8 Wheat, 229, the title never was in the husband, and the creditor therefore never had any right to trust him on the faith of such ownership. That he should at the time the debt was contracted, have represented that he owned a farm in Iowa (the debt being made in St. Louis, Missouri), (as to which, however, the creditors knew nothing more, and it being left in much doubt whether they in truth relied upon such representations), is not sufficient to show that he held himself out to the world as owner, within the meaning of the rule stated by appellee. And when it is remembered that the wife had no knowledge of such representations, but was on the farm in Iowa, where she has con-

tinuously lived with her children since the execution of the deed, the husband being seldom at home, leaving her for the most part to manage the household, all doubt upon this part of the case is removed.

It is said, however, that the wife withheld these deeds from record for such a length of time as to justify the inference of a fraudulent intent. If it appeared that the record title was in the husband at the time of contracting this debt, and that complainants actually or constructively gave credit to the husband on the faith of that fact, we should be inclined to hold that they were entitled to the rights of a prior creditor as against the voluntary unrecorded conveyance. And especially so if it appeared that she fraudulently or negligently withheld her deed from record.

But, as we have seen, the creditors had no reason to rely upon such record ownership, and they did not rely upon it. The wife, instead of acting so as to assist in the perpetration of the supposed fraud, sent her deeds to the proper registry office for record, within a few days after their execution, but failed to send with the same the fees for recording. She supposed they were on record until the latter part of June, when, being advised for the first time of the necessity of advance payment, she paid the same, and the deeds were at once filed and recorded. During the intervening time they were in the recorder's office, but not marked filed for the reason stated. There is nothing to show a fraudulent intent, however, on her part. She cannot be said therefore to have contributed to the alleged fraud. The credit was not given because of any thing committed or omitted by her. There is therefore no consequence growing out of her conduct with which she can justly be charged. The decree is

Reversed.