# APPENDIX.

---

## NOTES OF CASES NOT OTHERWISE REPORTED.

32 589
107 45
107 46

---

### PHILLIPS v. POTTER.

*Appeal from Jackson District Court — Saturday, June 10.*

#### EQUITY : TRUST.

PETITION in equity to enforce an alleged trust, stating in substance that the plaintiff, during the years 1851 and 1852, became the owner of about five hundred acres of land in Jackson county ; that defendant, who held a claim of about $1600, secured by trust deed on said land, by an oral agreement with plaintiff, sold and became the purchaser of said lands under said trust deed to satisfy *first* the said claim of defendant, and then, by said agreement, was to hold said lands for the benefit of the plaintiff; that she was to be allowed to redeem the same by payments of said claim of defendant with interest ; that the defendant, in violation of said agreement, has sold and converted the land, realizing therefrom a large amount of money in excess of the amount of the trust deed, and refuses to pay the same on account therefor to the plaintiff.

The defendant denies the agreement alleged, and that he purchased said lands or held the same as the trustee, or for the benefit of plaintiff as alleged, and avers that the sale under the trust deed was *bona fide* and for his own benefit.

The issues being made up, the cause was tried before the court by the first method, and a judgment was rendered dismissing plaintiff's petition, from which she appeals. The further facts are stated in the opinion.

*Monroe & Deery* and *Adams & Robinson* for the appellant — *Ellis Brothers* for the appellee.

MILLER, J. — The pleadings are elaborate, and the depositions are quite voluminous. A discussion of the facts in detail will not be entered upon. We will confine ourselves to a statement of the facts established by the evidence, and the application thereto of rules of law.

1. In our judgment, the evidence establishes that the lands in controversy were purchased by and with the funds of Jacob S. Phillips, the husband of the plaintiff, and the title thereto taken in the name of plaintiff; that at this time, said Jacob S. Phillips was not in debt and was in prosperous circumstances, and there is no evidence of any fraudulent intent on the part of the plaintiff, or her said husband, in this vesting the title in her. There is nothing in the evidence tending to show that the conveyance was made to the wife in contemplation of insolvency, but, on the other hand, it clearly appears that it was made in good faith, to secure the wife and family a home in case of future accidents or misfortune.

The deed was valid when made to the wife, and could not be rendered fraudulent by reason of the subsequent misfortunes or insolvency of the husband. *Lyman* v. *Cessford*, 15 Iowa, 229.

The plaintiff, therefore, was the *bona fide* owner in fee simple of the land, discharged from the debts of her husband, except such as were made liens thereon, with her consent.

2. From 1847 to 1852, Jacob S. Phillips was a partner with defendant in running a mill, and, for one year thereafter, was a partner with him in packing pork.

3. In August, 1858, said Phillips made a contract with one Lindsey, for the erection by the latter of a dwelling-house upon the lands of the plaintiff, which was finished in July, 1859, costing about $12,000.

4. In August, 1857, Lurlina Phillips, the plaintiff, with her husband executed a deed of trust to John W. Campbell, trustee, to secure to N. Corwith & Co. the sum of $3,100, evidenced by two promissory notes, the first for $1,500, payable in one year, and the second for $1,600, payable in two years, each bearing ten per cent interest.

5. The partnership between Jacob S. Phillips and the defendant having been dissolved, and an action by the latter against the former having been brought and still pending, said Phillips, on the 17th day of December, 1859, confessed judgment in said action for the sum of $1,661.58, which was on that day entered up in the district court of Jackson county; and on the 20th of the same month, the plaintiff, with her husband, mortgaged the same lands covered by the trust deed, to defendant, to secure this judgment, together with the sum of $15.00, and a stay of execution was given for one year on the judgment.

6. In the fall of 1859, Lindsey brought an action to recover the balance due him for erecting the dwelling-house on the " Phillips farm," and for a mechanic's lien ; and, in April, 1861, recovered a judgment for $2,830.41 and costs, and the establishment of his mechanic's lien.

7. In August, 1860, Phillips having failed to pay the first note due to Corwith & Co., the latter advertised the land for sale under the trust deed. Before the sale, however, Potter, the defendant, purchased the notes of Corwith & Co., and took an assignment thereof to himself and stopped the sale.

8. On the 15th day of January, 1861, the dwelling-house erected by Lindsey, on the plaintiff's farm, was destroyed by fire.

9. On the 21st day of January, 1861, defendant commenced his action in the district court to foreclose his mortgage and also the deed of trust, but afterward discontinued the action and advertised the lands for sale under the powers contained in the deed and mortgage.

10. March 21st, 1861, the plaintiff sold one hundred and sixty acres of the land owned by her and paid to defendant the $1,500 note secured by the trust deed; and, on the 2d day of April, 1861, she paid defendant the further sum of $1,916.58 and satisfied therewith the amount secured by the mortgage, leaving as the only claim held by defendant against the land the $1,600 note secured by the trust deed, on which $200 had been paid November 29, 1859, leaving a balance then unpaid of $1,448.47 and interest at ten per cent from November 29, 1859.

11. Lindsey having an insurance on his interest in the house erected by him on the "Phillips farm," and which was destroyed by fire, he received from the Insurance Company $2,000 on the amount of his policy, which he applied as a credit on the judgment obtained by him against Phillips. He afterward issued execution on the judgment, and the sheriff sold the two acres on which the mechanic's lien was established, Lindsey becoming the purchaser and obtaining a sheriff's deed therefor, so that he had no longer any lien on the land of the plaintiff.

12. On the 9th day of August, 1861, the day when by its terms the last note secured by the trust deed became due, the defendant exacted from the plaintiff the sum of $531.61 in consideration of the interest then due, and twenty per cent per annum for one year in advance for an extension of the time of payment of the amount due on the note for another year.

13. In the fall of 1862, and after the time of payment of the balance of the note again arrived, further negotiations between the plaintiff and defendant again took place. And, although the evidence is conflicting, we are fully convinced that the defendant and his attorneys by unfounded representations — that plaintiff's title to the farm was worthless, and that her husband's creditors would take it all from her — induced her to believe that the only method by which she could save any portion of the land was to suffer a sale thereof under the deed of trust; that the defendant could and would become the purchaser of the land and would then convey the same to her upon being paid the balance due him under the trust deed, together with any necessary taxes, etc.; that the plaintiff assented to this arrangement, believing it would be carried out in good faith, and, on the 2d day of January, 1863, the sheriff of the county, under the power of sale contained in the trust deed, sold the land embraced therein (except one hundred and sixty acres previously sold to Elias Hurd) for the sum of $1,600

to the defendant, who received a sheriff's deed therefor, February 6, following.

While the testimony of two witnesses tend in some degree to corroborate the defendant in his denial of this arrangement, yet the plaintiff is corroborated by undisputed facts which are utterly inconsistent with the defendant's testimony, and satisfy us that the plaintiff's theory of the case is the true one, and that in thus purchasing at the sale under the trust deed the defendant did so for the benefit of the plaintiff, after payment to him of the amount of money due him on the claim for which the land was sold, and any taxes and other necessary expenditures in carrying on the farm.

We are further satisfied that, but for the representations of defendant in respect to her title, the plaintiff could have sold a portion of the land and paid the defendant the balance due, thus avoiding a sale under the trust deed.

14. The evidence further shows, that soon after said sale the plaintiff transferred to defendant a note made to her by Elias Hurd on which the defendant received the sum of $412.

15. That on the 11th day of December, 1863, the defendant, in violation of his agreement with plaintiff, sold one hundred and forty acres of the land in one parcel, and twenty-five acres in another, with the dwelling-house, to one B. F. Baker, which was of the aggregate value of $2,300.

16. On the 1st day of March, 1866, the defendant sold and converted another tract of said land, of one hundred and sixty acres, to Baker & Clausen, for $3,000.

17. During the time defendant was in possession of the land, he received $140 rent for the year 1863, from B. F. Baker, and there is some evidence tending to show that he paid $310.25 of taxes on the farm.

18. That the defendant, out of the proceeds of the sales made by him of said lands, at different times accounted to the plaintiff, and paid over to her son, Alex. J. Phillips, the various sums of $300, $1,009.55 and $38.25; and there was also thus paid by B. F. Baker, by the direction of defendant, the further sum of $500, making an aggregate of $1,847.80, the correctness of which plaintiff admits.

19. June 6th, 1863, the plaintiff owed the defendant $65, for supplies obtained by her from defendant's mill, and on that day executed to him her promissory note for that amount, which, though not paid, was subsequently canceled and delivered up to plaintiff.

The foregoing constitute the material facts as we find established by the evidence, and upon which we state the account thus, to wit:

| | |
|---|---:|
| Amount of note dated August 9, 1859 | $1,600 00 |
| Nov. 29, 1859, amount paid thereon | 200 00 |
| Balance of principal then due | $1,400 00 |
| August 9, 1861, amount of interest due on balance | 237 22 |
| Making a total then due of | $1,637 22 |

On same date, the plaintiff paid in discharge of the interest then due, and as interest in advance for an extension of time for one year of the note............................ $531 61

This being usurious, the whole sum paid will be credited on principal and legal interest then due, leaving a balance of $1,105 61
March 30, 1863, to Nov. 17, 1864, paid by Hurd, for plaintiff....................................... $412 00
And rent for 1863, of Baker........,.............. 140 00     552 00

Leaving a balance of.................................. $653 61
To this add the plaintiff's note, and interest................ 68 25

          $621 86

We next charge the defendant with the one hundred and eighty-five acres of land sold to Baker.................. 2,300 00

Showing a balance due plaintiff, Dec. 11, 1863, of........$1,678 14
To this add interest at six per cent from that date to March 1st, 1866............................................. 223 75
March 1st, 1866, sale to Baker & Clausen.................. 3,000 09

Balance in favor of plaintiff............................$4,901 89
On this sum the defendant is entitled to a credit of the same date for moneys paid A. J. Phillips by Baker............. 500 00

Balance .................................. ..........................$4,401 89
Interest on this to March 13............................ .. 8 80

Total proceeds........................................$4,410 69
March 13, 1866, cash to A. J. Phillips, by defendant........ 1,309 55

          $3,101 14
From this take taxes paid by Potter...................... 310 25

Leaving a balance of.................................$2,790 89
To which add interest from March 13, 1866, to April 18, 1871, 854 61

Balance now due the plaintiff.........................$3,645 50

For which sum a decree will be entered in this court for the appellant, if she so elects ; otherwise the cause will be remanded to the district court, with directions to render a judgment for such amount in favor of the plaintiff.

                                 Reversed.