[No. 440.    August 19, 1891.]

## L. CERF & COMPANY, APPELLEES, v. G. BADARACO, APPELLANT.

CONTRACT OF SALE—RESCISSION—INSTRUCTIONS—EVIDENCE.—In an action of assumpsit for goods sold and delivered, on an order by mail, where it was a disputed question of fact whether the goods were of the kind ordered, and the jury found that they were, the defendant could not complain of an instruction that, "if a person orders goods, and he receives the goods he has ordered, if he does not wish to accept them it is his duty to return them immediately to the party from whom he ordered them; and if he retains them without any order direct from the sender to that effect, he would become liable for them, and, if they were burned up while in his possession, he would be responsible for them," etc. If an order for goods is sent by mail, and the order is strictly complied with by the party on whom it is made, the contract is complete in law, and the party ordering has no right to return the goods without payment; and, if they are destroyed by fire while in his possession, he is equally bound.

ID.—VERIFIED ACCOUNT, SUFFICIENCY OF—EVIDENCE—VERDICT.—Where, in such case, the plaintiffs introduced a verified account of the claim set out in the declaration, this was sufficient to establish prima facie every material averment thereof (sec. 1878, Comp. Laws, 1884); and a verdict of the jury, upon the question whether the evidence offered by defendant was sufficient to overcome the prima facie case thus established, will not be disturbed, in the absence of any substantial errors of law.

APPEAL, from a judgment in favor of plaintiffs, from the Second Judicial District Court, Bernalillo County. Judgment affirmed.

The facts are stated in the opinion of the court.

W. B. CHILDERS for appellant.

The rule of law applicable to goods sold on order is not correctly stated by the court. The true rule as appellant contends is that "property in goods of different quality from those ordered does not vest in the purchaser until he accepts them with a knowledge of their quality, or after he has had a reasonable opportunity of determining their quality, and neglects to notify the seller of his refusal to accept." Diversey v. Kellogg, 44 Ill. 114, 92 Am. Dec. 154, and note; Barton v. Kane, 17 Wis. 729, 84 Am. Dec. 729; Bruce v. Thompson, 2 Hill, 137; Loyd v. Wight, 65 Am. Dec. 636; Babcock v. Trice, 18 Hill, 420, 86 Am. Dec., and note; Reed v. Randall, 29 N. Y. 358, 86 Am. Dec. 305, and note.

The third instruction of the court is also erroneous. The person who orders goods and leaves the seller to select the goods, is not bound by any selection the seller may make. There is an implied warranty that the goods sent shall be valuable, merchantable, and suitable for the purpose for which they are known to be wanted. 2 Kent, Com. 478, 481; 2 Benj. Sales, sec. 843, 844, and notes, also sec. 918.

The seller is bound to give the buyer an opportunity to inspect the goods, and an acceptance for that purpose is not a waiver of the right to reject the goods. 2 Benj. Sales, sec. 966, p. 844, and note. See, also, Id., secs. 1042, 1051, 1052, and notes.

N. C. COLLIER for appellees.

O'BRIEN, C. J.—This is an action of assumpsit brought by L. Cerf & Co., a copartnership of St. Louis, Missouri, to recover the purchase price of a quantity of cigars and cigarettes sent by the firm to the defendant, Badaraco, Albuquerque, in the month of December, 1887. The defense was non assumpsit. The cause was tried to a jury, before LEE, J., presiding, at the fall term, 1889, resulting in a verdict in favor of plain-

tiffs for $245, the full amount claimed. Defendant
moved for a new trial, on the ground of erroneous
instructions given, and of refusing to give certain
instructions requested, and because the verdict is
against the law and the evidence, which motion the
court refused to grant. The cause is here on the
appeal of the defendant from the judgment entered on
the verdict. The errors assigned for determination
are: (1) "Because the court erroneously instructed
the jury: 'Now, if a person orders goods, and he
receives the goods he has ordered, if he does not wish
to accept them, it is his duty to return them immedi-
ately to the party from whom he orders them; and, if
he retains them without any order direct from the
sender to that effect, he would become liable for them,
and, if they were burned up while in his possession, he
would be responsible for them.' 'If the defendant
ordered a certain specific kind of goods, he would not
be obliged to receive the goods if they were not in
accordance with those that he had ordered, and he
might refuse to accept them; but, if he did so, he
would have to return them. If a party orders goods,
and directs the persons from whom he orders to select
goods of a certain kind, and permits him to make the
selection, and the goods are sent accordingly, then he
would be responsible for them, because he trusted the
other party to select the kind of goods that they were
to send. In that case, he would be responsible
whether the goods suited him or not; but if he directed
a certain kind of goods to be sent, and the goods sent
were not according to the order, and he immediately
notified the parties that they were not the goods that
he had ordered, and that he would not accept them,
and they directed him to hold them, then he would not
be responsible.' " (2) "Because the court erred in
overruling defendant's motion for a new trial." (3)
"Because the verdict is against the law and the evi-
dence."

Properly to appreciate the nature and scope of the alleged errors, we will state that plaintiff, in support of its demand, introduced a verified account of the claim set out in the declaration, and rested. This was sufficient, under section 1878, Compiled Laws, 1884, to establish, prima facie, every material averment thereof, and entitled plaintiff to a verdict for the amount claimed. The defendant, being the chief witness in his own behalf, to overcome the case so made by plaintiff, in his examination in chief and cross-examination testified: "Question. Are you the defendant in this case? Answer. Yes, sir.   Q. State the facts to the jury about the shipment of the cigars mentioned in this affidavit which has been read to the jury.   A.   He sent me before that there thing eight thousand cigars, and after four months I ordered eight thousand.  I told him, 'Send the same kind of cigars.'  He never sent any; he sent some other kind.  I went to take them cigars from the depot, and take them out to my store, and after I got them there I opened the case, and found they were not the same kind of cigars.  I wrote to him back I never accept them cigars, because it is not the kind I wanted; and then he answered me back to keep the cigars for him until he came.   Q. Did you receive that letter from him?   A. That letter my bookkeeper used to keep, and everything in the place was burned up.   Q. You say he wrote to you to keep them until he came?   A. Yes, sir; until he came.   Q. You mean until one member of the firm came?   A. Before when he came my house got a burning, and after he came he wanted to make arrangements with me.  If I would give him fifty dollars, he would give me full receipt. Q. What had become of the cigars in the meantime? A.. Cigars all burned in the store.   Q. Did you sell any of these cigars?   A. No, sir; I opened up the case to see, and I put them back in the case and closed up

<div style="margin-left: 2em; font-size: smaller;">VERIFIED accounts, sufficiency of: evidence.</div>

the case, not one cigar being used. Q. You say you told him to send you the same kind of cigars you had ordered before? A. Yes, sir; he never did, he sent other kind. Q. Were they the same brands? A. No; different brands, altogether. Q. You ordered these in letter, did you? A. Yes. Q. Who wrote the letter? A. Dr. Sutherland, the one who used to keep the book, and everything, and do all of my business. Q. How long after you wrote to him that you did not take the cigars was it before the house was burned? A. I do not know exactly how many days; I think about twenty-five, thirty, or forty days. I can not say, exactly, more or less. Q. How long after the house was burned was it before he came here? A. The house was burned in January, and he came in January, the 27th or 28th of January,—something like that. Q. What was the difference in the quality of the cigars which you ordered and the cigars which were sent? A. The difference was at least one half in value. Q. Were the cigars which they sent you worth what they charged you for them? A. What he charged me? No, sir; that is why I refused them. Cross-examination: Q. Well, you only made objection to the cigars, did you not? A. Yes, sir. Q. The cigarettes were all right? A. The cigarettes were all right. I ordered the cigarettes, and he sent them the same as I ordered, and the cigars he never did; and the time I saw the cigars, they were nothing of my sort of fashion. I left the cigarettes and cigars in the same case, and never took them out. Q. Did you not write him in that letter, 'The cigarettes are all right; the cigars I do not want at any price?' A. I do not know that I wrote him that. I wrote to send cigarettes $2.00 per thousand, and I take them; if he send me more, I never take them. * * * Q. Were the cigars you ordered all one brand, or of different brands? A. They were several different brands. Q. Were they all to be one price

or different prices? A. They were to be the same price as I had bought them before. They were ranging from $15.00 to $20.00. Q. The names of what brands did you put in your letter? A. I can not tell you. Q. Did you name any brands at all? A. I believe that I did not state any brands at all; simply told him to send me a good cigar, and to be of the same brands I had before. Q. You said all that in your letter? A. I believe this is what I told them. I can not tell you every one of the letters. Q. You left it to their judgment to select the cigars, if they did not have the same kind of cigars as you ordered? A. Yes, sir; I left it to their judgment." Dr. Sutherland and Pablo Blase testified also in behalf of defendant, but their testimony is of so indefinite and unsatisfactory a character that we do not deem it entitled to sufficient weight to warrant us in setting out any part of it in this opinion. When defendant rested, plaintiffs offered in evidence deposition of one Oscar Fleisheim, clerk of L. Cerf & Co. Defendant objected to the offer. Plaintiffs contended that portions of it would be clearly proper in chief, but that other portions were admissible in rebuttal, especially in reference to the alleged contents of defendant's letter containing order for the goods. Defendant thereupon, by leave of court, read answer to third interrogatory: "State what you may know about the sale of cigars and cigarettes by plaintiffs to defendant on or about December 6, 1887." Answer, read to court: "On the 6th day of December, we, L. Cerf & Co., received a letter from G. Badaraco, the defendant, dated at Albuquerque, December 1, 1887, in which he requested us to send him 3,000 cigars, at $20.00 per thousand; 3,000 cigars, at $25.00 per thousand; 3,000 cigars, at $30.00 per thousand; and 10,000 Old Rip cigarettes, at $2.00 per thousand. This order was executed in accordance with Badaraco's letter, and all of the articles above enumerated were

shipped to him by us, in one case, directed to defendant at Albuquerque, N. M., on same day that we received his order." Whether this testimony, and other portions of the deposition, were submitted to the jury or not, it is difficult to determine from the record; and it would be as fruitless as improper to attempt to review, with any degree of intelligence, this and various other offers of proof made by the respective parties during the progress of a trial remarkable as a model of obscurity and confusion. In the present state of the record, we will content ourselves with an examination of the errors assigned by appellant.

Defendant, to overcome the prima facie case made by plaintiff, endeavored to show that the goods sent were not the kind he had ordered, except the cigarettes. This is the substance of the contention between the parties. The exceptions to the three paragraphs of the charge must be examined and their merits determined in view of this issue. Had the goods ordered been delivered, as maintained by plaintiff, the instruction contained in the first paragraph is clearly against the plaintiff, and appellant has no cause to complain. The law is, if a person send an order by mail for goods, and such order is strictly complied with by the party on whom the order is made, that the contract is complete, and the party ordering has no right to return the goods without payment. If there be an inaccurate expression found in the second paragraph, it could not mislead, in the light of the testimony and of other portions of the charge, wherein the law is clearly stated. For instance, the statement that, if the goods received were not such as defendant had ordered, he might refuse to accept them, but if he did so he would have to return them, though not strictly correct, could not have injured the defendant. The jury must have found from the evidence, and would have found, whether this part of the

CONTRACT of sale: rescission: instructions: evidence.

charge had been given or not, that the goods sent corresponded with the goods ordered, or they could not have found in favor of the plaintiff. The exception taken to the third paragraph is equally devoid of merit. Defendant did not refuse to accept and pay for the cigars because they were not suitable, valuable, or merchantable, but because they were not such as he had ordered. The statement of defendant that the cigars were not half so valuable as those ordered is but the expression of an opinion based on the assumption that they were not the goods ordered. We find no material error in the instructions given.

The other two assignments of error, in view of the disposition made of the first one, are not well taken. We can not say, from the record before us, that there is not sufficient evidence to support the verdict. Had defendant introduced no proof, when plaintiff rested, the latter would have been entitled, under the provisions of the law cited, to a verdict for the amount of his claim. If the defendant, in his endeavor to overcome the prima facie case thus made, failed to satisfy the jury, by a preponderance of evidence, of the merits of his defense, we are not at liberty, in the absence of any substantial errors of law, to disturb the finding of the jury upon disputed questions of fact. It follows that the motion for a new trial was properly overruled. We may add that, in our opinion, had the cause been more regularly and fully tried in the court below, the evidence in support of the verdict would have been strengthened rather than impaired. The judgment appealed from will be affirmed.

McFIE, SEEDS, and FREEMAN, JJ., concur. LEE, J., having heard the case below, took no part in this decision.