[No. 1251, August 28, 1909.]

TERRITORY OF NEW MEXICO, Appellee, v. JOSE ABAN SAIS, Appellant.

### SYLLABUS.

1. Where the indictment alleges that the animal unlawfully killed was the property of co-partners, the ownership as laid in the indictment must be proved beyond a reasonable doubt.

2. Evidence held to warrant finding that animal unlawfully, knowingly, etc., killed, belonged to certain persons as co-partners, as charged in the indictment.

3. The judgment of a court should not be set aside upon the testimony of a witness, when it is apparent that such testimony was given in a rather bungling and inaccurate manner and where the jury hearing the witnesses and understanding the circumstances under which the offense charged was committed, would have a much better opportunity of arriving at a correct conclusion, than would the appellate court upon the record alone.

4. Evidence held to warrant conclusion that killing was knowingly done.

Territory v. Sais.

5.    The jury may consider manner of witness in which testimony is given in determining its weight.

6.    Ordinarily, neither the verdict of a jury nor the finding of fact of a trial court will be disturbed by the Supreme Court when they are supported by any substantial evidence.

Appeal from the District Court for Socorro County before EDWARD A. MANN, Associate Justice. Affirmed.

BACA & LOUGHARY for Appellant.

Ownership alleged in an indictment is one of the material allegations and must be proven as alleged beyond a reasonable doubt. 2 Bishop Crim. Proc., sec. 723, 3 ed.; State v. McCoy, 14 N. H. 364; Commonwealth v. Trimmer, 1 Mass. 476; Brown v. The State, 35 Tex. 691; Underhill on Crim. Ev., sec. 294, p. 353; Palmer v. The State, 41 Ala. 416; 25 Cyc. 92, notes 37, 41, 43; Widner v. State, 25 Ind. 234; Blankenship v. State, 55 Ark. 244, 18 S. W. 54; Hawkins v. State, 20 S. E. 217, Ga.; Underhill Crim. Ev. 353, sec. 294; McDowell v. State, 68 Miss. 348, 8 So. Rep. 508; Clark v. State, 29 Tex. App. 437, 16 S. W. 171; Thurmond v. State, 35 S. W. 965, Tex.; State v. Burgess, 74 N. Car. 272; C. L. 1897, sec. 2685, sub-sec. 80.

It is not proper to throw the burden of proof as to any element of the crime upon the defendant. 1 McClain on Crim. Law, sec. 315; Davis v. U. S., 160 U. S. 469-488.

J. M. HERVEY, Attorney General, for Appellee.

Contention that property belonged to partnership is amply sustained by the testimony. Territory v. Netherland, 13 N. M. 491.

No exception being taken in the court below, the ruling is not properly reviewable in the appellate court Territory v. Watson, 12 N. M. 419.

## OPINION OF THE COURT.

McFIE, A. J.—The appellant, Jose Aban Sais, was convicted in the District Court of Socorro County, of killing a calf, and was sentenced to serve a term of one

year in the New Mexico Penitentiary and to pay a fine of five hundred dollars. Appeal was prayed and granted as was also supersedeas.

The indictment in its charging clause is in substance as follows:

"That Jose Aban Sais, on the 7th day of April, 1907, at the County of Socorro, in the Territory of New Mexico, did, then and there unlawfully, feloniously, wilfully, maliciously and knowingly kill one head of neat cattle, of the goods, chattels and property of Eugene Guy Hills and Max Montoya, co-partners, doing business under the firm name and style of Montoya and Hills."

The law of this case is perfectly clear and is substantially as contended for in the brief of the appellant's counsel. The sole question to be examined here is one of fact, and as to that question, the appellant's counsel contend, that the evidence is insufficient to support the verdict of the jury, as to the ownership and guilty knowledge alleged in the indictment.

The indictment, as we have seen, alleged that the animal killed was the property of Montoya and Hills as co-partners and it became necessary to prove the ownership as laid in the indictment, beyond a reasonable doubt. The jury found the defendant guilty as charged in the indictment and that verdict necessarily means, that the jury were satisfied beyond a reasonable doubt that the animal killed was the property of Montoya and Hills.

The defendant's counsel insist, that the proof was to the effect that the animal killed belonged to Eugene Guy Hills alone and was not the property of Montoya and Hills. We have examined the evidence of all the witnesses who testified and find that it is true that Eugene Guy Hills, who testified as the prosecuting witness, spoke of the animal as his property, his testimony being substantially as follows:

"Well, while I was in there I looked over into another side into a calf pen and there I seen an animal covered with an old coat and I walked over there to see what it was and by this time why Jose was in this corral.

was in the corral where the cattle was, and I walked over to the corral where his calf was down and I looked over at it and saw that it was one of mine and then I told Jose that you have killed one of my calves and he says yes.",

The witness further says in referring to the calf killed: "I knew it was mine by the color and brand."

Another witness who was with Mr. Hills when they went to the corral, referring to the cattle in the corral, answered that,

"Most of it (meaning the cattle) belonged to Mr. Hills but there was some of his there also and there were some belonging to Victor Sais." The witness further referring to this transaction, testified that Mr. Hills said to the appellant upon the discovery that this calf had been killed, "You have killed a calf of mine."

This substantially covers the evidence in the case which the defendant contends shows that the animal killed was the property of Hills alone and not the property of Montoya and Hills as alleged in the indictment, and upon this basis urges that there was a failure of proof to show the ownership as alleged in the indictment. But an examination of the testimony shows that there was other evidence in the case to which reference will now be made.

Montoya did not testify but Mr. Hills, his partner, did testify. At the beginning of his testimony he states that he was engaged in stock raising. Then the following questions were propounded to him and answered, on pag 39 of the record:

"Q.   State whether or not you have any partner anybody engaged with you in that business?
A.   Yes.
Q.   Who is he?
A.   Max H. Montoya.
Q.   State whether or not you own any cattle together?
A.   Yes, we do."

On page 44 of the record Mr. Hills, testified to having loaned a cow to the defendant some time previous to the killing of this calf, and Mr. Hills was asked the following question:

"Q. And you claim that the calf belonging to that cow is the calf that was killed?

A. Yes."

In the testimony of Mr. Vallejos, another witness who was present at the corral when the discovery of the killing of this calf was made, and on page 49 of the record appear the following questions and his answers thereto:

"Q. Now, how many cattle were there there and whose were they?

A. Most of them belonged to Mr. Hills, but there were some of his also, (meaning appellant), and some belonged to Victor Sais.

Q. When you speak about the cattle of Guy Hills do you mean his individual cattle or the cattle of Montoya and Hills?

A. The cattle belonging to those two."

This witness further on testified as follows:

"The calf had been skinned on the side where I was so I did not see the color of the hide, but I noticed part of the head that was to the side where I was where the mark of the company was noticed on the face of the calf."

Upon this testimony counsel for the Territory insists that it was sufficient to warrant the jury in returning a verdict of guilty as charged in the indictment in this case. It seems that the contention of the Attorney General is warranted by this evidence. There is no evidence in the record that Mr. Hills owned any individual cattle and when he states that he was engaged in stock raising, and that Mr. Montoya was his partner, it seems that the jury was warranted in taking the view that the animals of which he spoke, especially the one killed, was partnership property notwithstanding the fact that he spoke of it as his own.

The judgment of a court, should not be set aside upon the testimony of a witness, when it is apparent that such testimony was given in a rather bungling and inaccurate manner and where the jury hearing the witnesses and understanding the circumstances under which the offense charged was committed, would have a

much better opportunity of arriving at a correct conclusion, than would this court upon the record alone. It seems clear that this witness was referring alone to the property of the company of which he was a partner, and it certainly was not necessary, although proper, for him to speak of the property as partnership property. By referring to the property and at the same time testifying to the fact of a partnership, seems sufficient to warrant the finding that the property was partnership property.

The conclusion of the jury seems to be more fully warranted by the testimony of the witness Vallejos, who was with Mr. Hills at the time the crime was discovered. The witness Vallejos speaks of the cattle in the corral as belonging to Mr. Hills also, but it is very clear that the witness did not mean that they were Mr. Hills' individual property, because when the question was asked him:

"When you speak about the cattle of Guy Hills do you mean his individual cattle or the cattle of Montoya & Hills?" he answered, "The cattle belonging to those two," undoubtedly referring to partnership property.

But suppose this testimony alone was not sufficient; there is another portion of Mr. Vallejos testimony which seems to be conclusive. At page 49 of the record he testified that he noticed part of the head of the calf that had been killed and that the mark of the company was on the face of he calf. The reference to the company here undoubtedly is to the co-partnership of Montoya and Hills, and the effect of this testimony is, not only to show that both the witness Hills and Vallejos were referring to company property and not to individual property throughout their testimony, but it establishes the further fact that this calf which had been killed belonged to the co-partnership.

It seems pertinent, also, upon this point, to observe, that during the trial, counsel for the defendant interrogated the witness Hills as to whether or not he had branded some of the defendant's cattle with the company's brand, and further, asked the witness, on page 45 of the record, the following question: "And you and Max Montoya have your cattle around his place simply because you

thought he would have no defense?" These interrogations indicate that defendant's counsel understood the testimony of Hills to relate to the cattle of Montoya and Hills.

A second question is suggested by counsel for appellant, but is not seriously contended for in their brief, namely, that the animal was killed by accident and not knowingly. The testimony of the defendant is the only testimony in the record which can be referred to as sustaining this contention, but we find from another portion of the record, in the testimony of Mr. Hills, that he charged the defendant with killing a calf belonging to him, and the defendant not only admitted that he had killed the animal, but further stated, that he did not have any meat and had to have some, thus giving this as a reason why he killed the animal, which he admitted did not belong to him.

In our opinion, the jury were warranted in the conclusion that the killing was knowingly done, especially when it is further considered that the animal appears to have been hidden and when discovered, the killing was promptly admitted by the defendant, who offered to pay for the same.

There is another matter appearing upon the record which may have been quite important in the estimation of the jury as a circumstance tending to discredit the testimony of the appellant. While the defendant was giving his testimony, his counsel in conducting his examination said: "Just tell the jury how did you come to kill the calf. Turn around and speak loud."

It may have been very apparent from the manner of the witness upon the stand, that his testimony was of a doubtful nature, a circumstance which the jury had a perfect right to consider in determining the weight to be given to his testimony.

The instructions given by the court, properly placed the case before the jury for their consideration and they were fully instructed to give the defendant the benefit of a reasonable doubt. It has been repeatedly held by this court, that, ordinarily neither the verdict of a jury nor the finding of fact of a trial court will be

disturbed in this court when they are supported by any substantial evidence. Waldo v. Beckwith, 1 N. M. 97; Archibeque v. Miera, 1 N. M. 160; Ruhe v. Abreu, 1 N. M. 247; Bedeau v. Baca, 2 N. M. 124; Crollot v. Malloy, 2 N. M. 198; Territory v. Maxwell, 2 N. M. 250; Rodey v. Ins. Co., 3 N. M. 543; Cerf v. Badaraco, 6 N. M. 214; Territory v. Hicks, 6 N. M. 596; Ortiz v. The Bank, 78 Pac. 529; Candelario v. Miera, 13 N. M. 360.

The case now under consideration seems to be within the law as above declared by this court. The evidence referred to was, in our opinion, of so substantial a character that the jury were warranted in returning the verdict found by them in this case. It was not error, therefore, for the lower court to overrule the motion for new trial and to render judgment upon the verdict of the jury. The judgment of the court below will be affirmed. It is so ordered.

Justices Cooley and Mechem not being present when this cause was submitted, took no part in this decision.