22 P.(2d) 118

**MAGEE v. MILLER et al.**
No. 3739.

Supreme Court of New Mexico.
May 2, 1933.

294

Crampton & Darden, of Raton, for appellant.

O. P. Easterwood, of Clayton, for appellees.

WATSON, Chief Justice.

Plaintiff, a judgment creditor of defendant Gunn, attacked the latter's conveyance to defendants Miller and Vaughan, claiming it to have been in fraud of creditors, and sought to subject the land to the satisfaction of his judgment. On findings and conclusions relief was denied and the complaint dismissed. Plaintiff appeals.

The trial court found that the conveyance was fraudulent on the part of Gunn; but, as to Miller and Vaughan, found that a fair consideration was paid, and refused to find that they had knowledge of Gunn's fraud or of facts sufficient to put them on inquiry.

Gunn's fraud consisted in this: March 9, 1930, he was personally served with process in appellant's suit, wherein recovery was sought for alienation of the affections of appellant's wife. He immediately disposed of all of his property in the state and absconded, appearing in the suit only by attorney. Appellant's status as a judgment creditor resulted.

As principles governing this class of cases, it is laid down by appellant in his able brief, that when the creditor has established the grantor's fraud, he has made a prima facie case; that the burden then rests upon the grantee to show that he has paid a valuable consideration; and that this will not avail as a defense if the creditor can further show that the grantee had knowledge of the fraud, or knowledge of facts so suggestive of fraud as to put him on inquiry.

Appellees do not question the correctness of these principles, for which appellant cites high authority. We may accept them, therefore, for purposes of this decision.

There is direct evidence which, if believed, fully warrants the holding that appellees had no knowledge of the tort action, of Gunn's fraudulent intent, or that the conveyance would enable him to defeat a possible judgment in the pending suit. That question must be resolved against appellant.

Applying the principles accepted for purposes of this case, there remain two possible situations in which appellant should have relief; first, if consideration was so lacking or inadequate as not to meet the prima facie

case against the grantees resulting from their grantor's proven fraud; second, if, regardless of the consideration, facts within their knowledge fairly put them on inquiry as to their grantor's good faith. Appellant contends that both of these situations are here present and that the court erred in determining to the contrary.

The transaction here in question originated in an executory contract made February 27, 1930, for the sale of 1,680 acres of land, all the real estate Gunn had ever acquired in this state, and the only property to which a creditor could look for satisfaction. The consideration named was $12,600. A deed and $1,000 of earnest money were placed in escrow, $3,000 additional was to be paid on approval of title and delivery of deed. The balance, after deduction of a Federal Land Bank mortgage assumed, was to be paid in three equal annual installments.

This contract was apparently pending when the tort action was commenced. On March 18th, nine days later, the sale was closed on a quite different basis. Appellees paid Gunn $2,000 additional to the $1,000 in escrow, and received the deed.

The pendency of the alienation suit was notorious in the community. Appellees realized that they were getting a fine bargain. They made no inquiry as to the reasons causing Gunn thus to sacrifice his property; considering that they had no proper interest in them. They knew of the pendency of another suit against Gunn in which damages were claimed in the sum of $700. They knew that Gunn was leaving the state hurriedly, and did not know or inquire whether he had any other property. They agreed between themselves not to disclose the price paid.

Just what are the proper inferences from these facts need not be determined. We may assume for present purposes, not only that they would have been sufficient, on review, to support conclusions favorable to appellant on both points, but that they would require us to set aside conclusions unfavorable to him.

But other facts which cannot be ignored throw a somewhat different light on the matter. It developed from the abstract that Gunn's title was not all it should be. A boundary line controversy was undetermined. The principal improvements, including house, barn, and well, were on the land in dispute. There was a risk of losing 160 acres because of a mortgage remaining undischarged of record. There were other minor imperfections. The mortgage actually assumed, originally $4,800, though perhaps reduced by payments to $2,400 of principal, was then calculated at $3,600. Appellees assumed the broker's commission which might have been $600 but was settled for $300. They assumed back taxes of $81.

These latter facts lessen the discrepancy between the consideration originally agreed upon and that finally paid. They also furnish a reason for failure to complete the trade on the original terms.

With all this, it is difficult to satisfy the suspicion arising from Gunn's eagerness to

trade on terms involving complete concession of every point. Evidently the reduction in price more than compensated for every risk. Why it was necessary to "calculate" so loosely the outstanding indebtedness to the Federal Land Bank is not explained. Indeed, appellees' admissions are convincing that they realized that they had fallen upon an extraordinary bargain.

One more fact, the last which we shall mention, though urged and relied upon by appellant, is, in our judgment, really unfavorable to him. When Gunn made the offer to close the deal for $3,000, which appellees accepted, he accompanied it with the explanation that "he was going to sell it (the land) and get out of there, or he was liable to do something he would always hate."

This is the only knowledge directly brought home to appellees as to Gunn's reason for disposing of his property and leaving. It has an important bearing on the duty of appellees to make inquiry regarding Gunn's suspicious conduct. Appellees may have accepted Gunn's declaration as true. We cannot say, as matter of law, that it was not sufficient to allay any suspicion they might previously have had of an intended fraud on creditors. And, so far as we can see, this explanation furnished a reason as to which they might well have said that it was no business of theirs to inquire further.

We are not convinced that the facts before us warrant overruling any of the conclusions of the learned trial judge of which complaint is here made.

The judgment will be affirmed and the cause remanded.

It is so ordered.

SADLER, HUDSPETH, and BICKLEY, JJ., concur.

ZINN, J., did not participate.