115 P.2d 636

CHESHER et al. v. SHAFTER LAKE CLAY CO.

No. 4555.

Supreme Court of New Mexico.

July 8, 1941.

Rehearing Denied Aug. 18, 1941.

Don G. McCormick, of Hobbs, and Richard E. Manson, of Santa Fe, for appellants.

Stagner & Reese, of Carlsbad, and Whitaker, Perkins & Turpin, of Midland, Tex., for appellee.

ZINN, Justice.

This is an action in replevin wherein the Shafter Lake Clay Company, a corporation, sought to replevy a warehouse and a quantity of drilling clay and cotton seed hulls from W. Kerley, sheriff of Lea County, New Mexico, who had levied execution upon the same under a judgment rendered in the District Court of Lea County in a cause in which A. C. Chesher was plaintiff. and Eagle Clay Company was defendant.

The Eagle Clay Company was a New Mexico Corporation operating a drilling clay business in Lea County, New Mexico. The stock in this corporation was owned by T. W. Eagleston, his wife, and an unnamed partner. A. C. Chesher instituted suit in the District Court of Lea County against the corporation upon a past due and unpaid indebtedness. A default judgment was rendered in favor of Chesher against the corporation on January 11, 1938.

The day following service of summons on Eagleston in the action against the Eagle Clay Company, Eagleston made a trip to Midland, Texas, where he consulted Barron Kidd and Hayden Miles, with whom

he had business relations. An agreement was reached between them whereby a new corporation was formed under laws of the State of Texas and all the assets of the Eagle Clay Company which were not mortgaged were conveyed to the new corporation, called the Shafter Lake Clay Company, which is the appellee in this case.

In making these negotiations Kidd and Miles did not know and Eagleston did not advise them of the pendency of the Chesher suit. Eagleston did tell them that the sum of $2,500, which is the amount paid for the assets, would substantially pay all of the Eagle Clay Company debts and that he would pay any remaining debts himself. The actual value of the assets is a subject of considerable controversy, appellants contending that the assets transferred had a fair value of $6,000, which is also the figure arrived at by the trial court in his findings of fact. Appellee contends most vigorously that based on the highest valuation possible under the facts, the total could not be more than $4,785. The debts of the Eagle Clay Company in fact exceeded the value of the assets whichever figure is accepted.

While the Eagle Clay Company received $2,500 for the assets transferred, it used approximately $600 or $700 of this to pay off an indebtedness which it owed Kidd and Miles. The remainder, about $1,800, was used for payment on other debts owed by the Eagle Clay Company. Eagleston further agreed with Kidd and Miles that he was to run the business of the new cor-

poration and they agreed that he was to be paid fifty cents for each ton of mud sold and that 125 shares, or one half of the corporate stock of the new corporation was later to be transferred to him. Eagleston agreed to work for the corporation for two years and not to engage in a competitive business during that time. Actually, he severed his connections with the company before the time expired and he never received any of the capital stock.

The bill of sale executed by the Eagle Clay Company was not recorded. The Shafter Lake Clay Company or its officers did not notify creditors of the Eagle Clay Company of the transfer of the assets, but after it took over the business all clay sold was billed out to the purchasers in the name of the Shafter Lake Clay Company. The business in all other respects appeared to go on as before the transfer and with the same personnel. No specific or public announcement was ever made of the transfer of the assets to the new concern.

While A. C. Chesher was still ignorant of the transfer of the assets to the appellee, execution issued in his favor on January 26, 1938, on his default judgment against the Eagle Clay Company. The execution was returned nulla bona. On April 18, 1938, an alias execution was issued and the next day Sheriff W. Kerley levied upon the property involved in this case. On that date neither Chesher nor the sheriff knew of the transfer, but before the actual seizure the sheriff and Chesher's attorney were informed by a man at the warehouse

that the same was property of the Shafter Lake Clay Company. They then searched the records of Lee County but found no evidence of the existence of the Shafter Lake Clay Company as the corporation had not at that time complied with the law of the State of New Mexico regarding foreign corporations doing business in this state, and they found no bill of sale covering the assets transferred on record.

After notifying appellants that the property involved in this suit belonged to the Shafter Lake Clay Company and after Chesher and the sheriff had refused to release the property, appellee instituted this replevin suit. Some ten witnesses testified during the course of the trial to various phases of the transaction between the Eagle Clay Company and the Shafter Lake Clay Company and their officers. Judgment was rendered in favor of the Shafter Lake Clay Company. The defendant Sheriff W. Kerley and Intervenor A. C. Chesher, as the real parties in interest, appeal.

Appellants contend that the record fails to sustain the judgment of the trial court in that "all the evidentiary facts as found by the court and as revealed by the evidence point to one inescapable conclusion" that the conveyance was void as being in fraud of creditors. Appellant contends that a prima facie case is thus established which has not been successfully overcome by any substantial evidence on the part of the appellee. Our New Mexico Territorial court, however, decided in an early case that the question of whether or not the evidence overcame a prima facie case will not be considered on appeal in the absence of error of law. Cerf v. Badaraco, 6 N.M. 214, 27 P. 504. Whatever the interpretation of this Court might have been had it acted in the capacity of a trier of the facts we find ample ground whereby the trial court's findings of fact can be sustained. We can not go behind these findings under the substantial evidence rule, frequently announced and adhered to by this court. Many witnesses testified at the trial. Where a case is tried by the court without a jury the trial court is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. This rule is elementary. If there is any substantial evidence to sustain the result, the findings of the trial court will not be disturbed. Territory v. Sais, 15 N.M. 171, 103 P. 980. See, also, New Mexico-Colorado Coal & Mining Co. v. Baker, 21 N.M. 531, 157 P. 167; Roth v. Yara, 22 N.M. 361, 161 P. 1183.

In the instant case there is evidence in the record which, if believed, fully warrants the holding that appellee had no knowledge of any fraudulent intent on the part of the Eagle Clay Company or its officer, or that the sale of the properties would enable the Eagle Clay Company to hinder, delay or defraud its creditors. There are circumstances, furthermore, which tend to the conclusion that even the Eagle Clay Company through its representative and president in making the sale did so with the hope of improving its financial

situation in order thereby to be in better position to pay off its creditors.

 It is admitted by appellants that the money received from the sale was used to pay off creditors of the Eagle Clay Company. This to be sure does not tend to show an attempt to defraud. It does tend to indicate a preference of some creditors over others. However, no proceedings had been instituted or were contemplated showing that the Eagle Clay Company was insolvent. As long as a concern is operating and no question has been raised by other creditors as to the solvency of the common debtor, there is no more reason to deprive a corporation of its right to prefer one creditor over another than in the case of the individual debtor.

The following from 27 C.J. 623, § 370, summarizes the law on this point: "A valid preference may be made by selling property to a third person for a fair price and paying over the proceeds to the creditor to be preferred, although the purchaser knows that the vendor's intent is to make a preference, and although the sale is made on credit, the vendor taking the purchaser's notes in payment, or in part payment. So a debtor may sell his property, in consideration that the purchase money be paid to some of his creditors, to the exclusion or postponement of other, and if it is done without any fraudulent design, and is a present application of his property to the payment of his debts, it is a valid transaction." See also 27 C.J. 499, § 163.

 Numerous "badges of fraud" said by the appellants to be present in the case are nothing more than circumstantial evidence which *may* point the way to a possible fraudulent conveyance but these do not necessarily do so. "In weighing the probabilities of the transferee's good faith," says Gerard Glenn in The Rights and Remedies of Creditors, 1915, page 116, "courts have resort to the so-called badges of fraud. Their character must not be misunderstood. Of themselves, they conclusively prove nothing, but they have probative value of varying force. No one of them is conclusive in law, but their value is of greater or less degree according to the particular case." See also, 27 C.J. 483, § 133. Sufficient direct evidence is present in the instant case to enable the trial court to find that fraud in fact did not exist. The various badges of fraud were in most instances explained in a manner which the trial court must have found satisfactorily overcame the possible inferences that could be drawn from them. Cf. Meyer & Sons Co. v. Black, 4 N.M., Gildersleeve, 352, 16 P. 620. The evidence in the case relating to consideration paid for the assets is confusing and conflicting. It has been held repeatedly by this court that where there is a substantial dispute upon the evidence, the findings of fact of the trial court will not be disturbed on appeal. See Weeks v. Bailey, 33 N.M. 193, 263 P. 29; Skarda v. First Mortgage Loan Co., 28 N.M. 536, 214 P. 761. The rule was recently reaffirmed by the decision in Men-

ger v. Otero County State Bank et al., 44 N.M. 82, 98 P.2d 834, when it was held that findings and conclusions of the trial court would not be disturbed where supported by sufficient evidence, notwithstanding the fact that there was persuasive contrary testimony.

Under point II the appellants raise the second major issue of the case, namely, whether, based on the fact found by the trial court that appellee was insolvent at the time the conveyance was made, the court erred as a matter of law in not finding or concluding that the conveyance was null and void as against all creditors of the Eagle Clay Company pursuant to Section 32-173, N.M.S.A., 1929 Compilation. The section reads as follows: "Whenever any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, neither the directors nor any officer or agent of the corporation shall sell, convey, assign or transfer any of its estate, effects, choses in action, goods, chattels, rights or credits, lands or tenements; nor shall they or either of them make any such sale, conveyance, assignment or transfer in contemplation of insolvency, and every such sale, conveyance, assignment or transfer shall be utterly null and void as against creditors: Provided, that a bona fide purchase for a valuable consideration, before the corporation shall have actually suspended its ordinary business, by any person without notice of such insolvency or of the sale being made in contemplation of in-

solvency, shall not be invalidated or impeached."

■■ Assuming its application, it is obvious that if the statute stopped just short of the proviso, the transaction in the case at bar would be void since there is an express finding that Eagle Clay Company was insolvent at the time of the transfer. No fraudulent intent need be shown to invalidate the transfer under the terms of this act. But the decisive consideration remains: Does Shafter Lake Clay Company, upon the record before us, appear as a bona fide purchaser for a valuable consideration without notice of its transferor's insolvency? If so, its purchase is shielded from impeachment by the express language of the statutory proviso. Otherwise it must bear the penalty of its own actual or constructive fraud.

Much of what is said in disposing of the preceding claim of error is applicable here. In other words, the findings relied upon by appellant (intervenor) as entitling him to judgment as a matter of law, are mere badges of fraud, inconclusive in their nature, and requiring the trial court to draw further inferences therefrom before converting them into support for a judgment setting aside as fraudulent the transfer or conveyance assailed. In the case at bar, the trial court declined to draw those inferences, some of which were specifically requested.

The court affirmatively found that the seller advised the purchaser that it had

outstanding debts but that the purchase price to be received, twenty-five hundred dollars, would retire substantially the entire indebtedness and that any remaining would be paid by the seller's officer negotiating the sale; that the purchaser "relied upon said statements and believed them to be true." Consistently with this finding the trial court refused to find that the purchaser knew the seller owed debts aggregating seven thousand nine hundred dollars. It further found, affirmatively, that of the two thousand five hundred dollars received, one thousand eight hundred dollars thereof were actually paid out on debts of the seller; that the officer negotiating the sale for the seller did not advise the purchaser of the institution of the suit in which appellant's judgment was recovered nor of the service of process on seller, and that the purchaser had no knowledge or notice of said suit until after the rendition of the judgment on January 11, 1938, nearly a month after the transfer assailed occurring on December 17, 1937.

Finally, the trial court refused appellant's specially requested finding, reading: "17. That the transfer of the assets of the Eagle Clay Company to the plaintiff corporation was made with the intention on the part of the plaintiff corporation to delay, hinder and defraud the creditors of the Eagle Clay Company of which the Intervenor A. C. Chesher was one." And concluded: "The Court concludes as a matter of law that the sale of the property of Eagle Clay Company to Shafter Lake Clay Company was valid and operated to transfer to said purchaser the full and complete title to said property."

While, as above stated, no fraudulent intent on seller's part is necessary to invalidate the sale under the statute, the trial court's refusal to find there was any fraudulent intent on the purchaser's part; the refusal to find that the purchaser knew the seller was indebted in the sum of seven thousand nine hundred dollars; the strong implication of good faith arising from the finding to the contrary that the purchaser believed and relied upon seller's representation that the purchase price received would retire practically seller's entire indebtedness, the balance, if any, to be paid by seller's officer negotiating the sale; the conclusion that the sale was valid and passed title to the purchaser; plus the entry of judgment in purchaser's favor—all, considered together, render it quite difficult to erect on the record a finding that the purchaser had notice of the seller's insolvent condition, a matter on which the findings are silent. No contention is made that the seller corporation had suspended business at the time of the sale.

All the statute, literally construed, requires touching consideration in the proviso, is that it shall be a valuable one. Mere inadequacy does not detract from the character of a consideration as a valuable one. Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407. Ordinarily, what the parties agree upon as a consideration, if lawful, will be so treated by the courts. However,

when fraud enters into the transaction, the consideration may be looked into for the purpose of testing the bona fides of the parties. We believe that, on the issue of good faith, we correctly interpret the statute as permitting the courts to press the matter beyond the mere conclusion that the consideration is valuable. If this were the ultimate answer sought, our inquiry would end now since no one can successfully contend that a two thousand five hundred dollar cash consideration is not a valuable one. Going a step further, then, we may announce at once that the consideration for the purchase seems inadequate. That fact alone, however, does not show bad faith or raise a presumption of fraud. 1 Glenn on Fraudulent Conveyances and Preferences, Rev.Ed., p. 512, § 296. The author states:

"Mere inadequacy of price is not enough of itself. Some courts say that there must be a 'grossly' inadequate consideration, and that this alone will justify a presumption of fraud. The truth lies in between.

"Of course it is impossible to hold people to exact values, nor did any court ever attempt it. Other things being equal, it is enough that what is paid be reasonably substantial, in the light of what is received. There must be gross disparity to justify the conclusion that the transfer was fraudulent. To hold otherwise would be to judge acts by irrelevant standards. The chance of today may bring a passable bargain; a harder trade tomorrow may result in better terms. Consequently the mere inadequacy of price alone is not enough. One

must be able to conclude that there was bad faith as distinct from a tight trade."

The trial court evidently was unwilling to draw the inference of "bad faith" as distinguished from that of a "tight trade", a thing essential to magnify inadequacy of an otherwise valuable consideration into a position of decisive importance, according to Professor Glenn. Cf. Magee v. Miller, 37 N.M. 293, 22 P.2d 118.

In a suit to set aside a transfer or conveyance as fraudulent the affirmative is on the creditor throughout. "So it does not matter that the particular case may put the creditor on the record as plaintiff (as where he sues to cancel a fraudulent deed), or as a defendant, e.g., where he levies on goods and is sued in Replevin by the transferee". 1 Glenn, supra, 470, § 274. While this is true as to the ultimate burden, that is in the sense of the risk of non-persuasion, nevertheless presumptions may arise from evidence adduced during the progress of the trial, for instance, a showing of badges of fraud, which will shift to the transferee the burden of explaining the transaction. 24 Am.Jur. 334, § 218, "Fraudulent Conveyances". Illustrative, the text states: "If payment of consideration for the transfer has been shown by the transferee or purchaser, the burden of proceeding shifts to the attacking creditor to show that at the time of the transfer and payment of the purchase money, the purchaser had knowledge of fraudulent intent on the part of the grantor or notice of facts which would have put him

on inquiry and which, if followed, would have led to knowledge of the grantor's fraudulent intent."

In 1 Glenn, supra, 470, § 274, the author states:

"The creditor, therefore, must start the ball by showing (a) the transfer plus (b) the debtor's fraudulent intent when he made it. The latter, as we saw in the last chapter, may be inferred from the fact that the grantor was indebted when he made the transfer. The deed, when produced, may recite a consideration; but that does not bind the creditor, because he is not suing as the assignee of the debtor. On the contrary,. he is asserting the right given creditors by the statute, to disregard the debtor's deed if made with fraudulent intent.

"Thus, at this point, the burden shifts to the grantee to show that he paid a valuable consideration. He need not show also that he acted in good faith, because that is. presumed of every man's acts. So the creditor, once the grantee shows that a consideration was paid, must resume the task, if he is to roll his case to a favourable decision. He must show that the grantee did not pay the consideration in good faith. He can, of course, meet finally the grantee on the issue of consideration or no consideration and that issue may also involve the question of good faith. But if he admits that there was a consideration (and we are interested here only with cases where that fact does appear) then the creditor must go forward and show that the grantee's case lacks the element of good faith."

Keeping these rules in mind, what is the situation in the present case on the vital issue of notice of seller's insolvent condition? Payment of a valuable consideration having been shown, the burden was back on the attacking creditor to show that the purchaser had notice of seller's insolvency. The parties are agreed that no express finding on the issue was made nor was one requested by either party. The trial court did make certain other findings and conclusions with which, as already indicated, it would be difficult to reconcile a finding of notice of insolvency, express or implied, in the purchaser. It then rendered judgment in the latter's favor.

In view of the conditions recited we are not permitted in derogation of the judgment, attended here by a presumption of correctness, to supply a finding of notice in the purchaser of the seller's insolvency. The implications are to the contrary. And yet a finding of such notice, express or implied, is essential to successful attack on the transfer by the seller. For New Mexico decisions dealing generally with fraudulent conveyances, and the burden of proof therein, see Meyer & Sons Co. v. Black, 4 N.M., Gildersleeve, 352, 16 P. 620; First National Bank v. Lesser, 10 N.M. 700, 65 P. 179; Ward v. Buchanan, 22 N.M. 267, 160 P. 356; Magee v. Miller, 37 N. M. 293, 22 P.2d 118.

The conclusion reached renders unnecessary the decision of other interesting ques-

tions presented and argued in the briefs of the parties.

It follows from what has been said that the judgment of the trial court must stand affirmed. The cause will be remanded to the district court of Lea County for such further proceedings, if any, as shall be proper not inconsistent with the views herein expressed. The appellee will recover its costs.

It is so ordered.

BRICE, C. J., and SADLER, MABRY, and BICKLEY, JJ., concur.