## FIRST NATIONAL BANK OF ALBUQUERQUE, Appellant, v. LESSER & LEWINSON, Appellees.

### SYLLABUS BY THE COURT.

FRAUD—PROOF—PRESUMPTION.—Where the facts upon which fraud is predicated consist as well with honesty as with dishonesty, the law presumes in favor of honesty. Facts in this case examined and held not to support the allegation of fraudulent concealment in the attachment affidavit.

*Appeal* from judgment in favor of defendants, from the District Court of Bernalillo county.

The facts will appear sufficiently from the opinion of the court.

ALONZO B. MILLER for appellant.

We do not consider it necessary to enter into an extended discussion of the law governing this case. It may be useful, however, to call attention to the following:

An admission of a partner relative to the firm business or property is binding on the firm to the same extent it would be on the individual if made in respect to his private business or property. Jones on Evid. Sec. 249.

The provisions of the attachment law relied upon are as follows:

"Sec. 2686.   Creditors whose demands amount to one hundred dollars or more, may sue their debtors in the district court, by attachment, in the following cases, to wit:

"Third.   When the debtor is about to remove his property or effects out of this territory, or has fraudulently concealed or disposed of his property or effects so as to defraud, hinder or delay his creditors.

"Fourth.   When the debtor is about fraudulently to convey or assign, conceal or dispose of his property or effects, so as to hinder, delay or defraud his creditors."

Our attachment statute was a part of the Kearney code and was taken directly from the statute of Missouri.   In adopting the statutes of Missouri we adopted the construction placed upon them prior to such adoption by the courts of that state.   Perea v. Colorado National Bank, N. M., 27 Pac. 323.

To sustain an attachment under our law it is not necessary to show either the intent to hinder, delay or defraud creditors nor that the act complained of was in fraud of plaintiff.   Sub. 2 and 3, Sec. 2686, C. L. 1897; Reed v. Pelletier, 28 Mo. 173; Douglas v. Cisna, 17 Mo. App. 44; Noyes v. Cunningham, 51 Mo. App. 194.

And intent to defraud is sufficient though transfer is valid as to grantee.   Enders v. Richards, 33 Mo. 599.

It may be either fraud in law or fraud in fact.   Leitendorfer v. Webb, 1 New Mex. 35; Meyer v. Block, 16 Pac. (N. M.) 620-627; Lawson v. Frank, 108 Ill., 502-7; Cook v. Burnham, 44 Pac. (Kan.) 477 and cases cited.

It is the duty of the debtor to so have his property that it may be seized on execution or other legal process for recovery of debts.   Curtis v. Settle, 7 Mo. 452.

The trial judge seemed to suppose that if the defendant got full price for the property that it made no difference what it did with the proceeds.   But this position is not tenable.   The concealment of money received from the sale of goods is as fraudulent as the concealment of the goods. Powell v. Mathews, 10 Mo. 49-53; Anderson v. O'Reilly, 54 Barb. (N. Y.) 620.

In the case of Powell v. Mathews, the Supreme Court of Missouri says:

"The seventh instruction explains more fully the views of the court.   That instruction declares that the concealment referred to in the statute must be a concealment of goods,

and not of facts and circumstances. This distinction we confess ourselves unable to appreciate. If Mathews had packed away in his cellar goods to the value of one thousand dollars with a view to defraud his creditors and prevent them from collecting their debts, this is conceded to be a fraud within the meaning of the statute; but if he sells the same goods and puts the money in his pocket with the same intent of cheating his creditors by the operation, it is regarded as a mere concealment of circumstances, we suppose, and therefore not such a concealment as is reached by the attachment law. The statute uses the phrase "goods and effects." The money for which the goods were sold to Huber was as capable of being concealed as the goods were, and the concealment of money is surely not less a fraud because it was accompanied with a concealment and misrepresentation of facts and circumstances." Powell v. Mathews, 10 Mo., page 53.

Under the New York law it was necessary to prove the element of intent and the court in the case of Anderson v. O'Rielly, supra., says:

"It stands conceded that the defendant has allowed her husband to take possession of all her money, and has made a false statement of the purpose for which it was appropriated. No other inference can be drawn than that such disposition of the defendant's money to her husband, coupled with a falsehood as to the purpose with which he took it, was made with intent to defraud her creditors, whom she put off upon the false pretext which she assigned. The defendant, therefore, is amenable to the charge of having disposed of her property with intent to defraud her credi-tors." Anderson v. O'Rielly, 54 Barb. (N. Y.) 620.

And where a debtor has converted his property into money and refuses to apply the proceeds to the payment of his debts, it will authorize an attachment for disposal of property and concealment to hinder, delay and defraud creditors. Shibley & Wood Grocery Co. v. Fergusson, 29 S. W. Rep. (Ark.) 275.

So withdrawing money from business in anticipation of suit is a concealment within the statute. Mathews v. Luth, 45 Mo. App. 455.

So where it appeared that defendant in attachment was largely indebted for one of his means and was in need of money, the transfer of his deposits from one bank to another, without explanation, was a circumstance tending to prove a concealment of property, and in connection with his other conduct at the time, sufficient to authorize the submission of that question to the jury. Mahner v. Lee, 70 Mo. App. 380.

It is clearly the duty of a debtor who converts his property into money to use that money for the payment of debts for the conversion of property into money puts it beyond the reach of ordinary process of law and the natural and inevitable tendency is to hinder, and delay creditors and therefore to defraud them. It is the duty of a creditor to so keep his property that it may be reached by the ordinary process of law. Curtis v. Settle, 7 Mo. 452.

The conveyance, disposal of, or concealment of, property condemned by the statute need not be of all of the debtor's property, but any part thereof is sufficient. Bank v. Western Lumber Co., 59 Mo. App. 317; Taylor v. Meyers, 34 Mo. 81; Shinn on Attachment, Sec. 123.

"To establish fraud it is not necessary to prove it by direct and positive evidence. Circumstantial evidence is not only sufficient, but in most cases is the only proof that can be adduced." Rea v. Missouri, 17 Wallace, 532, 543.

W. B. CHILDERS for appellee.

1. The authorities cited by the appellant do not sustain the contention that it is not necessary to show a fraudulent intent under our statute in order to sustain an attachment when the act itself relied upon does not per se amount to fraud in law. The other authorities which he cited in his brief all draw the distinction and point out clearly that when the act relied upon is something which the law itself makes fraudulent, then no intent is necessary. Where, however, the plaintiff relies upon fraud in fact as in this case, the very word "fraudulent" itself implies an intent and the authorities so hold. The Missouri decisions cited by appellant in his brief, so state the law. Reed v. Pelletier, 28 Mo. 173; Douglas v. Cisna, 17 Mo. App. 44; Noyes v. Cunningham, 51 Mo. App. 194; Enders v. Richards, 33 Mo. 599.

Our Supreme Court has also clearly stated the rule: "As has been shown, any form of disposal accompanied by fraud in fact, as an intention to prevent the collection of debts, or by fraud in law, arising from the inevitable tendency of his act to unreasonably hinder and delay such collection, will support the action."

The court also quotes with approval the following:

"The law in no case presumes fraud. The presumption is always in favor of innocence, and not of guilt. In no doubtful matter does the court lean to to conclusion of fraud. Fraud is not to be assumed on doubtful evidence. The facts constituting fraud must be clearly and conclusively established. Circumstances of mere suspicion will not warrant the conclusion of fraud. If the case made out is consistent with fair dealing and honesty, a charge of fraud fails." Kerr, Fraud & M., 384. Meyer v. Black, 4th N. M., 352, 369, 370, 374.

The case of Curtis v. Settle; 7 Mo. 452, simply decides that an act which hinders and delays creditors is fraudulent, that the allegation "So as to hinder and delay" is equivalent to an allegation of fraud.

The case of Powell v. Mathews, 10 Mo. 49-53, is not in conflict with the Supreme Court of New Mexico or the other Missouri cases. It simply decides that the fraudulent intent accompanying the act may be shown by circumstances. This proposition nobody will deny.

The case of Anderson v. O'Reilly, 54 Barb., cited by appellant, simply discusses the facts in that case. No such state of facts exists here. There is no falsehood or deception shown. The statements of Lesser as to the assets of the firm made in New York, and to Flournoy, in January, 1895, do not tend to sustain the allegation in the affidavit. If there had been an allegation that the debt was fraudulently contracted, etc., and the credit had been given in consequence of such statements, this evidence would be material. It is wholly immaterial under the issues here. Penoyer v. Kelsie, 44 N. E. 788; Kilpatrick v. McPheely, 56 N. W. Rep. 389.

Kemper v. Fischel, 44 Pac. 205, holds as follows: "Evidence of false statements by the debtor in reference to his

financial condition at the date of maturity of his debts, in order to secure an extension of time, to enable him to raise the money to pay his debts, will not sustain an attachment, upon the ground that the debtor is about to assign or dispose of his property with intent to hinder or delay creditors.

"An offer by the debtor to make a voluntary assignment for the benefit of all his creditors is no evidence of fraud, and is no ground for attachment.

"The fact that the debt may have been contracted by means of a false property statement has little direct tendency to show that a mortgage executed four months afterwards was made with intent to cheat and defraud creditors."

See a good discussion of the law in Trebilcock v. Big Mo. Min. Co., 68 N. W. 330; (South Dakota) also.

2. The law applicable to the evidence in this case is so satisfactorily stated by Bump and the citations are so complete that we quote from it.

"Amount of Proof.—While the law abhors fraud, it is also unwilling to impute it on slight and trivial evidence, and thereby cast an unjust reproach upon the character of the parties. Such an imputation is grave in its character and can only be sustained on satisfactory proof. If the evidence is so conflicting that no conclusion can be reached, the transaction must be sustained, upon the principle that the burden of proof is on the party who assails it, and if he does no more than create an equilibrium, he fails to make out his case. Mere suspicion leading to no certain results is not sufficient. A legal title will not be divested upon mere conjectures or evidence loose and indeterminate in its character. Fraud will never be imputed when the circumstances and facts upon which it is predicated may consist with honesty and purity of intention." * * * *

"Must Be Satisfactory.—What amount or weight of evidence is sufficient proof of a fraudulent intent is not a matter of legal definition. If the evidence is admissible as conducing in any degree to the proof of the fact, the only legal test applicable to it upon such an issue is its sufficiency to satisfy the mind and conscience and produce a satisfactory conviction or belief. The proof, however, must be

clear and satisfactory. It must be so strong and cogent as to satisfy a man of sound judgment of the truth of the allegation." Bump on Fraudulent Conveyances, 584 and 585.

In Missouri it is said: "Fraud may be presumed in equity, but must be proved at law; therefore, courts of equity, it is said, will act upon circumstances as indicating fraud which courts of law would not deem satisfactory proofs; or, in other words, will grant relief upon the ground of fraud established by presumptive evidence, which evidence courts of law would not always deem sufficient to justify a verdict." (Jackson v. King, 4 Cow. 297; 1 Story Eq. Jur., Secs. 190-3, and cases cited; 3 Greenl. Ev., Sec. 254.) King v. Moon, 42 Mo. 555.

3. Our own court as well as the Supreme Court of Missouri have decided that intent is necessary under that section authorizing an attachment when the defendant is "about fraudulently to convey, &c." This is also in the affidavit in this case. The same reasoning as to intent also applies to the clause charging that the fraudulent act has been done. Torlina v. Trolicht, 5 N. M. 148; citing; Spencer v. Deagle, 34 Mo. 455; Murray v. Carson, 15 Mo. 379; Gates v. Lebannon, 19 Mo. 17; Dougherty v. Cooper, 77 Mo. 529.

4. The court was not required to submit the case to the jury upon a mere scintilla of evidence. It was the plaintiff's duty to make out a case by satisfactory evidence. See Bump on Fraudulent Conveyances, supra.; Thompson on Trials, Secs. 2242, 2243 and 2245; Harris v. Wood, 9 Mo. 113; Boland v. Mo. R. R. Co., 36 Mo. 484; Callahan v. Warner, 40 Mo. 131; Charles v. Patch, 87 Mo. 450; Alexander v. Harrison, 38 Mo. 258.

This doctrine applies to cases involving intent, more strongly where the evidence does not show it, and the burden is on the party alleging, than to any other class of cases.

The cases in the Supreme Court of the United States which are binding on this court are: Pleasants v. Fant, 22 Wall. 116; Herbert v. Butler, 97 U. S. 319; Bowditch v. Boston, 101 U. S. 16; Griggs v. Houston, 104 U. S. 553; Randall v. B. & O. R. R. Co. 109 U. S., 478. Also Goodlett v. L. & N. R. R. Co., 122 U. S. 391; Ry. v. Com. Bank, 123

U. S. 733; Del. &c. Ry. Co. v. Converse, 139 U. S. 122; and cases there cited.

We submit that upon the evidence in this cause, the charge of fraudulent disposition and concealment is not established by satisfactory and cogent proof, and that the court below was right in directing a verdict; that if this court acts on the stipulation in the record and re-examines the fact as if it was a trial court and a jury had been waived, it must come to the same conclusion. Judgment of affirmance should therefore be entered.

PARKER, J.—This was an attachment proceeding brought by appellant against appellees, charging past and prospective fraudulent disposition and concealment of property. At the close of plaintiff's case, the trial court, on motion of appellees, directed a verdict in their favor. Counsel for the respective parties then stipulated that this court may render final judgment upon the evidence submitted for appellant in the trial court, either sustaining or discharging the attachment as in the opinion of this court may be warranted by the evidence. It is to review the action of the court in directing a verdict for appellees and entering judgment thereon, that this appeal is brought, and the sole question is presented whether the evidence for appellant was sufficient to support a verdict in its favor. If so, under the stipulation, judgment is to be rendered by this court, sustaining the attachment; if not, the judgment below was correct, and is to be affirmed. The facts shown by appellant's evidence are·substantially as follows: The defendants, Lesser and Lewinson, were a co-partnership composed of Louis Lesser and Sussman Lewinson. They began the dry goods business in the city of Albuquerque about the year, 1888, and continued in the same business, banking with the plaintiff bank, from that time up to the date of the attachment. Their deposits in the bank show an average of· about four thousand dollars per month. The firm continued in business up to the date of the attachment, which was on January 14, 1896. The last deposit was made January 7, 1896. On the morning of January 14, 1896, there was a balance to the credit of said firm of $266.56, which was withdrawn on the same day, after ten o'clock a. m., and

before the attachment, which was prior to twelve o'clock.
Immediately after the attachment, and before noon of the
same day, the defendant firm filed a deed of assignment
conveying all its property to A. E. Walker, assignee, for
the benefit of creditors. At the beginning of the year 1895,
Louis Lesser, a member of the firm, made a statement to
M. W. Flournoy, the vice-president of the bank, showing
that his firm was worth about $35,000. In February, 1895,
one member of the firm made a statement to some New
York creditors that the net worth of the firm was from
$31,000 to $32,000. During the year, 1895, the defendant
firm purchased goods for their store which were not paid
for, and the claims for which were proved against the as-
signee, amount to $25,291.55, of which sum $20,047.45 was
purchased subsequent to July 1, 1895. The only property
of the defendants turned over to or found by their assignee
was the stock of dry goods attached by the plaintiff, and
the book accounts, the whole being appraised at the sum
of $12,703.82. There was no money delivered to the as-
signee. No attempt is made by appellant to show what dis-
position was in fact made of the money realized from the
sale of goods during the year preceding the attachment,
the simple fact appearing that a large amount of merchan-
dise was owned and a large amount acquired on credit and
not paid for, during that period, and a certain amount re-
mained and was turned over to the assignee of appellees on
the day of attachment, leaving a discrepancy of many thou-
sands of dollars unaccounted for. Neither is any attempt
made to show what was in fact done with the money realized
from sales during the seven days next prior to the attach-
ment, nor the $266.56 withdrawn from the appellant bank
on the morning of the attachment and assignment. It
simply appears that this money was not turned over to the
assignee under the assignment. Appellant rests its case
upon the proposition that these large amounts of merchan-
dise and these sums of money having been
traced to appellees, they will be presumed
FRAUD: proof: to continue in the possession of the same or
presumption. the proceeds thereof until the contrary is
made to appear, and, consequently, the same
not having been turned over to the assignee,

they will, in the absence of explanation, be presumed to have fraudulently concealed the same.

If the appellees did in fact conceal ,the money mentioned, it would be difficult to understand how the same could be done otherwise than fraudulently, for concealment for the purpose of preventing creditors from reaching assets would, under all ordinary circumstances, necessarily include a design to defraud them. But the plaintiff is met with the well recognized proposition that "if an honest motive can be imputed equally as well as a corrupt one, the former should be preferred." Waite Fraud. Conv., Sec. 6; Bump Fraud. Conve. p. 562; 14 Am. & E. Ency. Law, (2nd Ed.), 512, notes 2 and 3; Lyman et al. v. Cessfort et al., 15 Iowa, 229; Dallam v. Renshaw, 26 Mo. 533; Herring v. Richards, 1 McCrary, 570; Gregg v. Sayre, 8 Peters, (U. S.), 244; Bank v. Schuman, 63 How. Prac. (N. Y.) 476.

This proposition is otherwise stated: "If the facts upon which the conclusions of fraud are predicated may consist with honesty and purity of intention, that construction ought to be given them." 14 Am. & E. Ency. Law, (2nd Ed.), 512.

Applying this proposition to the facts in this case, it seems clear to us that the judgment of the court below was right. The first fact presented by appellant is the receipt of large amounts of 'merchandise by appellees which are not accounted for in the assignment, nor are the proceeds thereof. It appears from the record that appellees kept books of account and that counsel for appellant demanded inspection of the same. An examination of these books would necessarily disclose what became of the goods and the proceeds of the sales of the same, if the books were honestly kept. Thus it would be made to appear whether the goods were sold for cash, and if so who got the money; how much, if any, was sold on credit, and whether the accounts had been collected. But these books are not offered by appellant, and there is. nothing before us throwing any light upon the actual conduct of their business by appellees. For aught that appears, appellees may have sold enough goods on credit for which they never received payment, to account for the discrepancies mentioned. Or they may have

made bad investment sufficient to consume all of the large amount unaccounted for. The appellant has seen fit to furnish us no light on the subject, when the evidence was at hand, and no inference can be drawn, it seems to us, except in favor of the honesty of appellees' transactions. On the other hand, if the books were dishonestly kept, and a portion of the cash received systematically abstracted, this fact must be capable of demonstration from the books themselves. Yet not a word is offered pointing in this direction. The same may be said in regard to the fact of no deposits having been made for seven days next previous to the assignment. If sales were made during those seven days the books must show the amount of cash received, and what became of the money. If the money went into improper hands, or if the books fail to show what became of the money, a condition might arise requiring explanation by appellees. And so with the deposit which was withdrawn. If the books fail to show what became of this money, or show that appellees retained it, a very different case would be presented; but no such proof is offered. This money, as well as that received during the seven days prior to the assignment, may have all been used for perfectly lawful purposes for aught we know from this record. Not a single fact appears which points unequivocally to concealment, or which may not as well be accounted for in consonance with honesty as with dishonesty. It may be that appellees systematically robbed their business of money and secreted the same from their creditors; that their transactions were reeking with fraud; but there is no evidence before us from which we can reach such a conclusion. On the other hand, their transactions may all have been honest. We can not, from this record, conclude what the real fact is. The facts consisting as well with honesty as with dishonesty, the law presumes in favor of honesty. The judgment of the court was evidently correct, and will be affirmed. And it is so ordered.

Mills, C. J., McFie and McMillan, JJ., concur; Crumpacker, J., having tried the case below, took no part in this decision.