132 P.2d 426

**MARCHBANKS v. McCULLOUGH.**
No. 4730.

Supreme Court of New Mexico.

Nov. 17, 1942.

Rehearing Denied Jan. 13, 1943.

Frazier & Quantius, of Roswell, for appellant.

E. E. Young, of Roswell, for appellee.

BRICE, Chief Justice.

This suit was initiated in the district court by the First National Bank of Ros-

well, by filing a complaint to foreclose a mortgage against the property in suit, alleging among other things that the defendants Addie McCullough (appellee here), Opal Parker and W. D. Marchbanks (appellant here) claimed some lien, right, title or interest in or to the property mentioned. The appellant answered alleging that appellee held title to the property for the benefit of defendant W. C. McCullough and that he (appellant) claimed a lien by reason of a judgment in the amount of $411.50, which was filed for record on December 23, 1940.

By cross-complaint against appellee and her son W. C. McCullough, appellant charged that appellee had no beneficial right, title or interest in said property. That it belonged to her son, W. C. McCullough, against whom he had recovered a judgment which had been duly filed in the office of the county clerk of Chaves County, by reason of which he held a judgment lien against said property. He prayed that his judgment lien be foreclosed and held to be subject only to the bank's mortgage, and that out of the proceeds of the sale of the property at foreclosure, the amount due appellant be paid with costs.

In her answer to appellant's cross-complaint appellee denied she held title to the property for W. C. McCullough and alleged title in herself. She denied that the judgment in question was a lien against the land in suit. By cross-complaint against appellant appellee sued to quiet title in herself.

We are here concerned only with the issues between appellant and appellee. These parties abandoned their original action and defense as pleaded, and tried the cause as one involving the question of whether the transfer of the property in question by W. C. McCullough to appellee was for the purpose of hindering, delaying or defrauding creditors of McCullough and particularly the appellant.

Appellee asserts that as the appellant's cross action was to foreclose a judgment lien, and hers to quiet title in herself to the property in question, that the question of whether that property had been transferred to hinder, delay and defraud McCullough's creditors is not in the case.

It is true that it was not originally in the case, and appellee might have rested her case after the introduction in evidence of her title papers. But not satisfied with such procedure, she introduced evidence to establish the bona fides of the transaction wherein her son W. C. McCullough transferred the real estate in question to her. By her own act she changed the cause of action, which was accepted by the appellant and acquiesced in by the trial court. The question tried with the acquiescense of the trial court was whether the property had been transferred to hinder, delay and defraud creditors, and particularly the appellant, and the trial court decided the case on that theory.

Certainly no new cause of action could have been injected into this suit at the trial without an agreement of the

parties (Hudson v. Herschbach Drilling Co., 46 N.M. 330, 128 P.2d 1044), but if the parties, with the court acquiescing, desired and did substitute a different cause of action, we are not disposed to interfere on appeal, at the behest of one of them.

 The only question is whether a certain deed from W. C. McCullough to his mother, the appellee, was executed for the purpose of hindering, delaying and defrauding his creditors. If it was so executed it is void as to such creditors by the statutes of the 13th and 27th of Elizabeth, which were adopted with the common law in this state. If void then the judgment lien should have been foreclosed and the judgment satisfied out of the proceeds of the sale of the property. If not void then the decree of the district court should be affirmed.

The undisputed facts are as follows: The property in question was bought by McCullough in 1925. He leased a ranch from appellant and in July, 1940, was indebted to appellant for rent and for injuries to a well in the total sum of $400. On July 14th of that year appellant told W. C. McCullough, in the presence of appellee, that he wanted payment and threatened court action. On the next day McCullough executed a deed transferring the property (all he owned in New Mexico) to appellee. On August 12, 1940, appellant filed suit against appellee. On August 27, 1940, McCullough acknowledged the execution of the deed and on the next day filed it for record and paid the recording fee. In January, 1941, the McCulloughs moved from New Mexico and live now in Arizona.

The appellee testified substantially as follows: The defendant W. C. McCullough is her only son. Her husband died in 1937 and prior to his death gave the son the real estate in question; also, prior to his death he loaned the son $500. There were no papers executed to evidence this loan. Her husband built two rooms onto the house on the real estate in suit, which cost him substantially $600, and for which the defendant McCullough owed his father at the time of the latter's death. Appellee found a statement of the cost of the two rooms among her husband's papers, showing the expenditure of $472. This money was furnished as a loan. The defendant deeded the property to her because she was interested in it, and then "another thing, to keep his (defendant's) wife from coming in, you see; afraid maybe she would, and I wanted to clear the title between me and his wife." They first discussed having the property turned over to appellee in 1937 and it just "drifted along." The deed was made July 15, 1940, because "we just could not get to it earlier." They lived out in the mountains. She knew that her son was having difficulty with appellant over a debt. On July 15, 1940, McCullough told his mother he was making the deed to her. It was returned to her from the county clerk's office after it was recorded in August. They had talked about having deed made before Mr. Marchbanks filed suit against her son. She never rendered the property for taxation. Her son had

been paying the taxes after his father died except "the last time." She paid it out of the rent money. Her son has been collecting the money, but has been turning it over to her. He began this about two years ago. The rent money is sent by her agent to her. She received the rent before the deed was made. "Q. In other words, what you want you take and what your son needs he takes? A. Yes, that is the way we manage, and that is the way we have been doing." Her son had no other property in New Mexico. The $500 was paid to him in cash. She helped to count it out. They kept it at home. They never discussed the Marchbanks judgment. The consideration was the cancellation of the debts originally due her husband.

The defendant W. C. McCullough testified: "I obtained the property in question from Charley Greene and wife in 1925 at a cost of about $800. After I mortgaged it to the First National Bank I conveyed it to my mother by deed dated July 15, 1940, filed for record August 28, 1940 and recorded in the deed records of Chaves County. In 1935 an addition was built on this house and work done in the original rooms at a cost of $500 or $600. The material and labor were paid for by my father. When I bought an interest in the M & J Grocery I obtained $500 cash from my father. I have not repaid any of this money. At my father's death there was no will and his estate was not probated. My half sister and I signed papers conveying our interest in his estate or cash in the bank and personal property, to my mother.

The money I owed my father would then be transferred to her as they were living together at the time I obtained the money from him. I cannot state the exact amount that the construction cost but $500 or $600. I made no evidence of any indebtedness."

The cross complainant Marchbanks (appellant) testified that he had a conversation with McCullough on the 14th of July, 1940, in the presence of his mother. They were loaded and ready to leave his (appellant's) ranch. "I demanded that he pay me the lease money he owed and for damage to a well. He agreed to see me in Roswell. He came to Roswell but dodged me. He ran through a cleaning house and I ran after him but could not overtake him. I never saw him afterwards until October 4, 1940. I never could get to talk to Mrs. McCullough."

We stated in Magee v. Miller, 37 N.M. 293, 22 P.2d 118: "As principles governing this class of cases, it is laid down by appellant in his able brief, that when the creditor has established the grantor's fraud, he has made a prima facie case; that the burden then rests upon the grantee to show that he has paid a valuable consideration; and that this will not avail as a defense if the creditor can further show that the grantee had knowledge of the fraud, or knowledge of facts so suggestive of fraud as to put him on inquiry."

This rule, however, is subject to another, to-wit, that there is no law which prevents a preference of one creditor over another (except bankruptcy and insolvency

laws not involved here), if the transfer is not in fact made with the intent and purpose of hindering, delaying or defrauding any creditor; notwithstanding the transferer may be insolvent, Field v. Otero, 32 N.M. 338, 255 P. 785; American Nat'l Bank v. Miller, 229 U.S. 517, 33 S.Ct. 883, 57 L.Ed. 1310; Jewell v. Knight, 123 U.S. 426, 8 S.Ct. 193, 31 L.Ed. 190; 24 A.J., Fraudulent Conveyances, Sec. 92, although the effect will be to hinder and delay other creditors. Sunday Creek Coal Co. v. Burnham, 52 Neb. 364, 72 N.W. 487.

The trial court found on this question as follows: "The Court further finds that the consideration paid by the said Addie M. McCullough was approximately $1,100.-00, which the Court finds was a good and valuable consideration, and that the said transaction and the said deed were not made for the purpose of hindering or delaying the Cross-Complainant W. D. Marchbanks in the collection of his judgment against the said W. C. McCullough, or any creditor, and that no fraud attended the said transaction."

 If reasonable men all agree, or if they may fairly differ, as to whether the evidence establishes such facts, then it is substantial. In re Koprowski, 48 Wyo. 334, 46 P.2d 61; State ex rel. Wentworth v. Baker, 101 Mont. 226, 53 P.2d 440; State v. Gregory, 339 Mo. 133, 96 S.W.2d 47; Milford Copper Co. v. Industrial Comm., 61 Utah 37, 210 P. 993; Jenkins & Reynolds Co. v. Alpena Portland Cement Co., 6 Cir., 147 F. 641; Grand Trunk R. Co. v.

Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485.

Appellant depends entirely upon the proof of certain "badges of fraud" to support his contention that the quoted finding of the trial court should be cancelled. These "badges of fraud" are as follows:

(1) The consideration was not loaned by the appellee herself but was money due her husband for money loaned during his lifetime to W. C. McCullough, which she either inherited or which was transferred to her by the other heirs at law, and which was barred by the statute of limitation.

(2) He transferred to his mother the only property he owned in the State of New Mexico. (3) After the transfer he collected the rents. (4) The relation of mother and son existed between the parties. (5) The transfer was made immediately after threatened litigation, and the deed was filed of record shortly after the appellant's suit was filed against McCullough.

 These facts are not conclusive although they bend credulity almost to the breaking point.

There was no testimony as to the value of the property except by inference. It originally cost $800 in 1925, and two rooms and other improvements were built thereafter at a cost of about $600. There is some difference between the cost and the consideration but this may be accounted for by deterioration or other reasons. The trial court evidently believed the appellee, who testified that her son had agreed to convey

this property several years before, but the matter had been neglected. That it was not so conveyed because of any threat of litigation, but to pay the debts due her by her son.

We stated in Field v. Otero, supra [32 N.M. 338, 255 P. 786]: "There is another consideration which prevents recovery in this case. The complaint fails to allege insolvency of the husband at the time of the execution of the deed, or at the time of recording the same, and the court expressly refuses to so find, although so requested by the plaintiff. The court found insolvency of the husband at the time of the commencement of this action, which was subsequent to the recording of the deed, and more than two years subsequent to the execution of the deed. That such an allegation and such proof is necessary in a case of this kind * * *."

If in fact the transfer was made solely for the purpose of paying the pre-existing debt and the consideration was valuable and adequate it cannot be set aside for fraud, notwithstanding appellant has been defeated in the recovery of his debt.

It might be added that there is no evidence of insolvency in the record— and we have read it carefully. The evidence is that he had no other property in New Mexico. But it does not necessarily follow that he is insolvent or has not property elsewhere sufficient to meet all his obligations. It may be that the members of this court would have reached a different conclusion on the facts, but as we are bound by the "substantial evidence" rule we do not feel justified in holding that the conveyance was made to hinder, delay or defraud the appellant or other creditors.

The judgment of the district court should be affirmed, and it is so ordered.

SADLER, MABRY, and BICKLEY, JJ., concur.

ZINN, J., did not participate.