141 P.2d 188

**NATIONAL MUT. SAVINGS & LOAN ASS'N v. LAKE et al.**

No. 4758.

Supreme Court of New Mexico.

June 15, 1943.

As Amended on Denial of Rehearing Sept. 24, 1943.

Don G. McCormick, of Hobbs, for appellant.

Dailey & Rogers and Donald M. Bushnell, all of Albuquerque, and John R. Brand, of Hobbs, for appellee.

BICKLEY, Justice.

The appellee is a judgment creditor and claims a lien of such judgment on the north half of Lots 1, 2, 3 and 4, Block 119, Highland Park Addition to the Town of Hobbs, effective if at all as of December 27, 1938. It sought to establish the priority of such lien as against claimants of interests in such premises and a foreclosure thereof.

The controversy here is between appellee and appellant Neighbors.

The facts required to be stated for an understanding of our decision and which were found, or should have been found, in response to specific requests by appellant, are that on January 2, 1938, defendants below L. E. Lake and wife owned the property herein involved, and other real property. The above described tracts were subject to a mortgage in favor of Lea County State Bank for $1,750, which was acquired by J. S. Eaves and Seth Alston.

Lake being heavily indebted was unable to pay the mortgage obligation. Eaves and Alston were threatening to foreclose the mortgage and refused to grant Lake any further extension of time for payment. An agreement was worked out between Lake and Eaves, and Alston whereby in order to avoid foreclosure Lake and his wife would convey the property to Eaves and Alston who in turn would execute to Lake a conditional sales contract allowing him to purchase the property back on the installment plan.

A contract was drawn up providing for the conveyance of this property to Lake upon the payment of $1,750 plus interest. Contemporaneously a warranty deed from Lake and his wife to Eaves and Alston was delivered and forthwith recorded. A quit claim deed was executed by Eaves and Alston to Lake and placed in escrow along with said contract.

Up to June 10, 1939, Lake paid $800 plus interest on the contract and there was on that date a balance due of $950.

The sales contract was in default and subject to forfeiture at the option of Eaves and Alston who threatened such forfeiture.

Lake being unable to pay the balance due on the contract contacted an acquaintance of long standing with whom he had maintained business and friendly relations, the appellant Ruby P. Neighbors, in regard to purchasing the contract and the property with the result that she agreed to pay a total of $3,500 for the property and made out two checks both payable to Lake. One was in the amount of $950 which was endorsed by Lake to Eaves and Alston. The other was in the amount of $2,550 which check was endorsed by Lake to a committee representing a group of his insurance creditors, and all of said $2,550 was applied to debts owing by Lake.

It was found by the Court that on June 10, 1939, the property involved was not worth in excess of $3,500.

Before delivery of the Quit Claim Deed out of escrow the names of the grantees, which had been L. E. Lake and Mrs. L. E. Lake, were erased and the name of Ruby P. Neighbors inserted. This was done by C. L. Creighton, the notary public, who prepared the deed originally and who took the acknowledgment of it. It was done with the consent of the grantors, and also with the consent of Mr. and Mrs. L. E. Lake. This was the same deed which had been placed in escrow at the time of the execution of the contract referred to heretofore. This deed was then delivered to the appellant, Ruby P. Neighbors, who immediately went into possession of the property and who caused the deed to be recorded July 10, 1939.

The controversy presented in this review arises from conflicting views as to the proper inferences and conclusions to be drawn from the facts, concerning which there is little or no controversy.

The trial court adapted the views of appellee, and found and concluded in part:

"that by conveying the property to Eaves and Alston, Lake had the intent fraudulently to delay and hinder his creditors in getting record title out of himself and making it appear that he had no interest in the property which could be seized upon by creditors; that he treated and regarded the transaction as a mortgage and not as a sale; that at all times after the execution of the deed to Eaves and Alston, he was in default in the payments which he had agreed to make in his contract with Eaves and Alston; that Eaves and Alston never cancelled such contract, but excused such defaults in payment and extended additional credit to Lake; that at the time the property was conveyed to Ruby P. Neighbors the contract had not been forfeited or cancelled, and that Lake then knew that a deed could be obtained therefor by the paying of the balance due of $950.00; that at the time he procured the conveyance of such property to the Defendant, Ruby P. Neighbors, the suit of Pioneer Mutual Compensation Company was pending, Judgment being entered therein ten days later; that Lake's action in conveying the property to Eaves and Alston, and in having the same conveyed to Ruby P. Neighbors, constituted a scheme to defraud his creditors and was fraudulently designed to put his property out of the reach of his creditors. That Mrs. Neighbors immediately went into possession of the property but did not file her deed for record until July 10, 1939.

"6. That prior to her purchase of the property, Ruby P. Neighbors had occupied one of the houses located thereon as a tenant of L. E. Lake; that on her purchase of the same she continued to live in this house, and as of such date commenced to collect rents from the other tenants of the property; that she withheld the deed executed in her favor from record until July 10, 1939.

"7. That Defendant, Ruby P. Neighbors, had been well acquainted with Defendant, L. E. Lake, during all times pertinent hereto, and had acted as his secretary and bookkeeper; that she had knowledge of his financial difficulties and of the suits pending against him and of the Judgments which had been obtained against him; that she knew that the property which she was purchasing belonged to L. E. Lake subject to the payment of $950.00 to Eaves and Alston, and knew that the deed which she accepted therefor had been altered by substituting her name as grantee for that of L. E. Lake and wife; that prior to the purchase of such property she made no investigation as to the title of the same, but relied on the word of Defendant L. E. Lake, as to the status of the title, and had no conversation or negotiations with Eaves and Alston relative to the purchase of such property, and in buying the same delivered to L. E. Lake a check for $950.00 and a second check for $2,550 both payable to L. E. Lake, trusting him to pay the balance due Eaves and Alston and to procure a deed in her favor; that in such transaction she joined with the defendant, L. E. Lake in a scheme to defraud his creditors and was an active participant in said scheme, with knowledge of all the facts and surrounding circumstances, and cannot occupy the position of a purchaser of such property in good faith."

\* \* \* \* \*

"9. That the transaction whereby Defendants, L. E. Lake and wife, conveyed the Neighbors property to Eaves and Alston, and the attendant obligation assumed by Eaves and Alston to reconvey upon the payment of the indebtedness, and the execution of a deed by them in favor of L. E. Lake and wife to be placed in escrow, constituted a mortgage of the property involved to secure the indebtedness, and were so intended by the parties, and L. E. Lake and wife remained the owners of such property subject to such mortgage."

\* \* \* \* \*

"11. That the Defendants, L. E. Lake and Ruby P. Neighbors, in the transaction whereby the deed covering the North Half (N½) of Lots, 1, 2, 3 and 4, Block 119, Highland Park Addition, was delivered to Ruby P. Neighbors, were guilty of a fraud on the creditors of L. E. Lake; that such transaction constituted a scheme to defraud creditors and that the conveyance to Ruby P. Neighbors was for such reason void as to the existing creditors of L. E. Lake.

"12. Up to June 10, 1939 Lake had paid $800.00 plus interest on the contract and there was on that date due a balance of $950.00. The contract was in default and by its terms was subject to forfeiture at the option of Eaves and Alston; that Lake had been almost continuously in default and had been threatened with forfeiture shortly prior to the transaction with Mrs. Neighbors.

"13. That on June 10, 1939 the property involved was not worth in excess of $3500.00.

"14. That the transaction whereby Ruby P. Neighbors obtained the Quit Claim Deed

was handled in the manner it was with intent on the part of Lake to avoid the payment of the Judgment or Judgments herein sued upon by having the legal title pass directly from Eaves and Alston to Ruby P. Neighbors thereby allowing Lake to prefer other creditors to wit; his insurance creditors, and he was joined in such intent by Mrs. Neighbors."

The Court concluded as a matter of law that the plaintiff (appellee) should be decreed to have a valid and subsisting lien for the amount of its judgment as of December 27, 1938, upon the property claimed by appellant Neighbors, and also a lien for the amount of said judgment upon four other parcels of real estate owned by Lake in the Town of Hobbs, as to which appellant is unconcerned.

Judgment was rendered effectuating said conclusion of law with provisions for foreclosure of the alleged lien.

Appellant's characterization of the effect of the various transactions is reflected in her requested finding of fact as follows: "6. That the transaction whereby Ruby P. Neighbors obtained the Quit Claim Deed was handled in the manner it was with intent on the part of Lake to avoid the payment of the Judgment or Judgments herein sued upon by having the legal title pass directly from Eaves and Alston to Ruby P. Neighbors thereby allowing Lake to prefer other creditors to-wit: his insurance creditors."

Appellant urges five propositions of law in support of her contention that the judgment should be reversed, the first three of which are as follows:

"I. The evidence, reviewed in a light most favorable to appellee, does not support any finding of a scheme to defraud the creditors of L. E. Lake.

"II. To support a Finding of Fact that a deed and repurchase contract constitute a mortgage there must be clear and convincing evidence and where evidence is only to the effect that parties did not intend it to constitute a mortgage, the Finding of Fact must be set aside.

"III. Where Court makes a Finding of Fact that transaction was void and unlawful because made with the intent to defraud creditors and also makes Finding of Fact that transaction was made with intent to prefer other creditors and therefore lawful under the circumstances, the findings are in irreconcilable conflict and constitute reversible error."

We have read the record studiously bearing in mind the rule that the burden of proof is at all times on the creditor who attacks a conveyance on the ground that it is fraudulent and in furtherance of a design to hinder and delay and defraud creditors. See Chesher v. Shafter Lake Clay Co., 45 N.M. 419, 115 P.2d 636.

Lake was in financial difficulties but there is no allegation in plaintiff's pleadings that he was insolvent and no proof was offered that presented such an issue and no finding was made of such insolvency. The presence or absence of insolvency of a

grantor while perhaps not necessarily a sole determinative factor in arriving at a conclusion on the question of intent is nevertheless an important and powerful one. See Field v. Otero, 32 N.M. 338, 255 P. 785.

Lake was the owner of other real estate to which the alleged lien of appellee attached, and there is an intimation in the Court's decision that this property might possibly be of sufficient value to satisfy plaintiff's claim without recourse to the property here involved.

 The broad allegation that the transaction of Lake with Eaves and Alston and the defendant Neighbors was a scheme to defraud the creditors of Lake finds distinct refutation in the fact that Lake's efforts in finding a buyer for the contract and the property inured to the benefit of his creditors, albeit to not all of them. The appellant Neighbors paid for the property all that it was worth. In cases of this sort a voluntary conveyance, or one upon a glaringly inadequate consideration, is looked upon with suspicion and inferences may be drawn that are frequently fatal to the conveyance.

Conversely, conveyances made upon valuable and full consideration are not presumed to be fraudulent against existing creditors, and the extent of the grantor's indebtedness is immaterial. That conveyances upon a valuable and even full consideration may be void against creditors if made with an actual express intent to hinder, delay or defraud them may be conceded, but the intent cannot be inferred by presumptions, and must be proved by evidence legitimately tending to show its existence. See Pomeroy's Equity Jurisprudence. 5th Ed. § 972.

In other words the burden of proof resting upon one who attacks a conveyance as fraudulent increases when it is developed that the conveyance was made upon full consideration.

 This is not a case where the grantor conveyed all of his property. The presumptions in the present situation do not work in support of the attack upon the conveyance but they work in support of the conveyance. For instance the presumption of honesty and fair dealing and legality which attends the actions of men until the contrary is cleary shown, comes to the aid of the transaction.

 In the case at bar what transpired put no money in the purse of the appellant. It resulted in no preference in her behalf since she was not a creditor of the grantor; she acquired no advantage. If the grantor received any benefit it was indirect, resulting from the advantage to his creditors through the liquidation or diminution of his indebtedness. This reasoning is appropriate only if we accept appellee's theory that in some way Lake was the owner of an equity in the premises through his contract to purchase, to which it is claimed appellee's lien attached. The contention of appellee that its lien attached to Lake's interest or equity in the contract and property is interesting but for the reason stated hereafter cannot serve to defeat the interest of appellant. A lien attaches to the land

and title thereto but there is divided authority on the question whether it attaches to a contract right to acquire such title. 15 R.C.L. 803; 31 Am.Jur. 26; 30 A.L.R. 504.

This does not seem to have been an action to attach or otherwise sequester Lake's inchoate interest in the property. Appellant challenges this theory of appellee as belated because not presented at the trial and as being unsound anyway. We agree that this theory was not presented at the trial and we express no opinion as to whether this contention of appellee is sound or not.

From the finding of fact requested by appellant, heretofore quoted, it appears that the matter was handled in the manner related with the intent on the part of Lake that his insurance creditors should get an advantage that might otherwise inure to Eaves and Alston. It is not apparent how appellee would have profited if Lake had remained passive and had permitted a forfeiture by Eaves and Alston. That some creditors received an advantage does not necessarily establish that other creditors were defrauded. Appellee cites no authorities to the effect that it is unlawful in the absence of statutory restriction for a debtor to secure a preference of some creditors over others. Where the debtor is not alleged or proved to be insolvent it is not generally thought that preferences are reprehensible.

■ Appellant presents a strong contention to the effect that the Court's findings of fact that the transaction was void and unlawful because made with the intent to defraud creditors, and also that the transaction was made with intent to prefer creditors other than appellee are in conflict and neutralize each other. We need not go into this except to say that the finding that the transaction inured to the benefit of creditors detracts to a substantial degree from the finding that the transaction was in fraud of creditors. That some creditors may have been hindered and delayed by a preference does not necessarily render the transaction void, particularly in the absence of any substantial evidence that the appellant was guilty of a fraudulent complicity.

■ We find it unnecessary to discuss each assignment of error presented by appellant, since we conclude that the material findings of fact upon which the judgment against appellant rests, including the finding that the deed was a mortgage, are not sustained by substantial evidence.

The judgment in so far as it affects interests of the appellant, Ruby P. Neighbors, is reversed, and the cause remanded with directions to render judgment in favor of said Ruby P. Neighbors.

It is so ordered.

SADLER, C. J., and MABRY and BRICE, JJ., concur.

THREET, J., did not participate.