286 P.2d 299

William D. LUMPKINS, Appellee,

v.

Jackie McPHEE and Jessie Angier, Appellants.

No. 5876.

Supreme Court of New Mexico.

May 31, 1955.

Rehearing Denied Aug. 16, 1955.

Dean Zinn, Santa Fe, for appellants.

Harry L. Bigbee, Donnan Stephenson, Santa Fe, for appellee.

SADLER, Justice.

The defendant, Angier, has appealed from a judgment of the district court of Santa Fe County awarding plaintiff a lien upon certain real estate, which she had purchased from her daughter, to secure a judgment recovered by plaintiff against the daughter in the amount of $2,000. The award of the lien rests on a finding by the trial court that the deed from the daughter to the mother was made with intent to hinder, delay and defraud plaintiff of his judgment. Incidentally, ownership of the lien mentioned is now in Janette Chalk, formerly Janette Lumpkins, the parties having stipulated that the cause shall proceed in the name of original plaintiff as though still holder of the lien.

The cause was tried before the court without a jury and resulted in the adoption of certain findings of fact and conclusions of law incorporated in the trial court's decision, the substance of which will be recited. Speaking as of the date of the judgment Jackie McPhee, the daughter, was a resident of California and her mother, Jessie Angier, a resident of Texas. On July 18, 1951, the plaintiff recovered judgment against defendant McPhee in the sum of $2,000 in a certain suit then pending in the district court of Santa Fe County entitled "William D. Lumpkins, Plaintiff, v. Jackie McPhee, Defendant," numbered 24,083 on the civil docket of said court.

Thereafter on July 30, 1951, execution was issued upon the judgment mentioned and was in due course returned *nulla bona*. Prior thereto and on January 27, 1951, the defendant McPhee had executed a warranty deed to her mother, the defendant Angier, conveying to her lots 22, 23 and 24 situated on the south side of west Santa Fe Avenue in the West Santa Fe Avenue Subdivision, as shown on the plat of survey made by Walter G. Turley on August 24, 1948, and filed of record in the office of the county clerk of Santa Fe County on August 26, 1948. Two days later, on January 29, 1951, the deed just mentioned was filed for record with the county clerk of Santa Fe County and duly recorded.

Thereafter on May 21, 1953, the plaintiff assigned all interest in the judgment to his former wife, Janette Chalk, the parties stipulating that no question should ever be raised concerning who was the real party in interest by reason of the fact that the cause would continue in the name of original plaintiff, although any recovery would be held in trust by him for the said Janette Chalk.

The consideration for the deed mentioned above was the sum of $4,000 which Mrs. Angier was to pay to her daughter, defendant McPhee, as the purchase price for said real estate over an unspecified period of time and in unspecified installments. No written contract or other memorandum nor any note or mortgage, was prepared or signed by either of the parties to said real estate transfer, nor were documentary stamps attached, thus reflecting a departure from usual business routine and practice regarding conveyances. Mrs. Angier, mother of grantor in said deed, was generally familiar with her daughter's transactions and condition.

Although the warranty deed mentioned was made prior to entry of judgment in said cause No. 24,083 in which plaintiff recovered judgment against defendant McPhee as aforesaid, the latter was indebted at the time to the plaintiff who was making demands for the payment of the debt and threatening litigation. The conveyance was made by the defendant McPhee in anticipation of the enforcement of plaintiff's claim. The claim being asserted by plaintiff against defendant McPhee at the time of the execution of the latter's conveyance of said real estate to her mother was subsequently reduced to judgment in cause No. 24,083 and arose out of the same transaction.

The real estate conveyed by the daughter to the mother comprised all of the daughter's property within New Mexico or elsewhere and the conveyance was made by her in contemplation of insolvency and rendered her insolvent with respect to her assets in New Mexico or elsewhere. The conveyance of said property from the daughter to the mother was entered into

by the daughter for the purpose and with the intent of hindering, delaying and defrauding her creditors, including the plaintiff, and prevented him from obtaining his lawful demands.

The action out of which this judgment grew was filed August 20, 1951. A lis pendens in connection with said action was recorded the same day with the county clerk of Santa Fe County. On September 5, 1951, a writ of attachment was issued and a levy of same made on the real estate involved on October 1, 1951. The attachment mentioned was subsequently dissolved by order of court on October 3, 1952. In the meantime, the plaintiff caused to be published in the Santa Fe New Mexican, a daily newspaper published at Santa Fe, a notice of suit in connection with the institution of said action and the notice having been observed by A. R. Angier, a son of defendant Angier and a brother of defendant McPhee, the son called his mother in Texas by long distance about October 22, 1951, read her the notice and mailed her a copy thereof to her usual address in Texas which she duly received.

Mrs. Angier, one of the defendants, paid her daughter as the full purchase price of the real estate mentioned on dates and in amounts as follows, to-wit:

| | |
|---|---|
| June 30, 1951 | $ 100.00 |
| August 6, 1951 | 100.00 |
| August 8, 1951 | 709.90 |
| August 11, 1951 | 100.00 |
| September 28, 1951 | 1,000.00 |
| February 27, 1952 | 250.00 |
| March 24, 1952 | 250.00 |
| December 26, 1952 | 300.00 |
| December 27, 1952 | 700.00 |
| February 19, 1953 | 500.00 |

The trial court concluded its findings of fact being findings numbered 15 and 16 and adopted its conclusions of law 1 to 6, in the following language, to-wit:

"15. The defendant Angier, by being informed of the fact that she had been sued in this action, of the nature and objects of this action, and of the levy of attachment which said information came to her knowledge on or about October 22, 1951, at which time only $2,009.90 of the purchase price had been paid by her, acquired knowledge of the Defendant McPhee's fraud, or thereby acquired knowledge of facts so suggestive of fraud as to put her on inquiry, which, had it been pursued in a reasonably prudent manner, would have culminated in her acquisition of actual knowledge of Defendant McPhee's fraud.

"16. Defendant Angier failed, neglected or refused to ever make any inquiry whatsoever as to the bona fides of the conveyance, the rights of plaintiff, the purposes and intent of De-

fendant McPhee, or as to any matter hereto material.

### "Conclusions of Law

"1. The Court has jurisdiction of the parties and the subject matter of the action.

"2. Defendant Angier is not a bona fide purchaser for value without notice of plaintiff's rights with respect to sums paid by her to the Defendant McPhee on the purchase price of the realty involved subsequent to on or about October 22, 1951, when she acquired knowledge of Defendant McPhee's fraud or was placed upon inquiry as to the bona fides of the transaction, but made no inquiry.

"3. From and after on or about the 22nd day of October, 1951, Defendant Angier's payments on the purchase price of said realty were constructively fraudulent as to the rights of the plaintiff.

"4. The plaintiff should be adjudged and decreed to have and own a lien upon the real estate involved herein to the extent of $2,000.00.

"5. The plaintiff should be awarded his costs of suit as against the Defendant McPhee.

"6. If the Plaintiff's lien aforesaid is not paid within a period of ninety days from the entry of judgment here-in, then the plaintiff should be permitted to proceed to foreclose his lien in the same manner as other liens upon realty may be foreclosed as presently provided by law."

The foregoing recitation of findings and conclusions presents a fair summary of the facts found and conclusions drawn upon which the trial court based its judgment. It adjudged to the plaintiff a lien on the lots and parcels of real estate in the city of Santa Fe to secure the amount of plaintiff's judgment theretofore recovered against Jackie McPhee as aforesaid. There can be no question but that the findings and conclusions adopted by the trial court support the judgment rendered. Our concern over the facts is, then, not upon that score but rather whether the facts in evidence support the findings made and to the extent they do not, whether different conclusions are proper on the true facts.

■ The plaintiff insists that because defendants moved to dismiss when plaintiff rested and, following a denial of the motion, introduced evidence and failed to renew their motion when the case ended, they have waived error in the trial court's action on the motion. Perhaps so and we have so held but this does not mean they have waived a challange to sufficiency of the evidence to support the findings. The trial court's refusal of defendants' re-

quested findings suffices to reserve this claim of error.

It is important to fix in our minds certain dates, some of which have been mentioned above, when we begin consideration of sufficiency of the evidence to sustain a finding that the deed from the daughter to the mother was made with a fraudulent intent to hinder, delay and defraud creditors, especially the plaintiff. As already stated, Mrs. McPhee, the daughter, acquired this property at some unfixed date subsequent to 1949. It was conveyed to Mrs. Angier, her mother, by warranty deed on January 27, 1951 which, two days later, was filed for record with the county clerk of Santa Fe County. The suit out of which plaintiff's judgment arose was filed on April 20, 1951, and judgment by default was taken against Mrs. McPhee on July 18, 1951.

Thereafter, on August 20, 1951, the present suit in which the judgment appealed from was entered was filed in the district court of Santa Fe County and a notice lis pendens in connection therewith was issued and filed for record in the real estate records of Santa Fe County on the same date, to-wit, August 20, 1951. Shortly thereafter and on September 5, 1951, a writ of attachment was issued in the suit and levied on the real estate involved herein on October 1, 1951. The attachment was subsequently and on October 3, 1951, dissolved by court order.

Notice by publication against the defendants was issued under date of October 4, 1951, and published in four successive issues of Santa Fe New Mexican, one week apart, beginning with that of October 8 and ending with that of October 29, 1951. The published notice having been observed in the paper by A. R. Angier, son of Mrs. Angier, one of the defendants, he called his mother in Texas on or about October 22, 1951, and read her the notice and within a few days mailed her a copy of same, which she duly received.

A reading of the findings satisfies us that the trial court in no way connected Mrs. Angier, the mother, with the fraudulent intent found to have been present in her daughter's mind and actions until on or about October 22, 1951. This was the date upon which the son of Mrs. Angier chanced to see the notice of publication touching plaintiff's suit in an issue of Santa Fe New Mexican and immediately telephoned his mother in Texas concerning it, at the same time mailing her a copy of the publication which she received in due course of the mails. From that time forward the trial court felt that Mrs. Angier knew, or should have known, that the daughter's sale to her of the real estate in question for an agreed consideration was made for the

purpose of defeating or hindering the collection of plaintiff's judgment. But unless mere recitals in the notice are to be accepted without more as proof they speak the truth, the notice itself meant nothing save as there was proof at the trial sufficient to establish fraudulent motives and intent on the daughter's part. We find none.

The trial court found the sale of the property actually took place as claimed by the mother, that she agreed to pay $4,000 for the property, as testified, and did pay that sum, more than half of it before the date, October 22, 1951, as of which date the court charges her with constructive notice or knowledge of her daughter's fraudulent intent in making the sale.

The several badges of fraud relied upon by the appellee to support judgment are: (1) The conveyance was made at a time when litigation against the transferee was threatened or anticipated. (2) The transaction was conducted in a manner differing from usual business routine or practices. (3) The conveyance disposed of all of the transferor's assets in this state and elsewhere; that the transferor was in bad financial condition and being pressed for payment of debts at the time of conveyance. (4) That the relationship between the parties to the conveyance was that of mother and daughter.

We think there is here no such showing of fraud, on either the daughter's or the mother's part as afforded justification for the court to impose the lien it did on the property conveyed in the hands of Mrs. Angier, the mother. In several former decisions of this court, we have dealt with so called badges of fraud and the weight to be given them in setting aside conveyances claimed to have been made in fraud of creditors. See Ward v. Buchanan, 22 N.M. 267, 160 P. 356; Chesher v. Shafter Lake Clay Co., 45 N.M. 419, 115 P.2d 636; Marchbanks v. McCullough, 47 N.M. 13, 132 P.2d 426; National Mutual Savings & Loan Ass'n v. Lake, 47 N.M. 223, 141 P.2d 188; Pavletich v. Pavletich, 50 N.M. 224, 174 P.2d 826.

In Ward v. Buchanan, supra [22 N.M. 267, 160 P. 359], we said:

"In other words, it was decided that a fraudulent intent of the grantor and a knowledge thereof or participation therein by the grantee are both to be proved. This rule is not only a salutary one, but a necessary one, unless deeds absolute in form are to be lightly set aside and thereby property rights seriously unsettled, if not destroyed."

The mere fact that the mother-daughter relationship existed between the parties to the transfer and that documentary stamps were omitted from the deed do

not furnish adequate proof to support a charge that the sale was not bona fide. The fact that the parties to the transaction are related by blood or marriage is to be considered, of course, but it requires more than that to impeach an otherwise valid conveyance. See 24 Am.Jur. 186, § 28 under "Fraudulent Conveyances" where the text states:

"The simple fact that the parties. to the transfer are related by blood or marriage does not however, warrant a conclusion that the transaction is illegal."

■ Nor is the mere fact of insolvency of the grantor at time of conveyance if, indeed, the proof of insolvency relied upon adequately supports the finding (as we think it does not under Marchbanks v. McCullough, supra), to be accepted as justification for setting aside a deed as fraudulent. See 24 Am.Jur. 177, § 20, "Fraudulent Conveyances," where the author states:

"The simple fact that the debtor was insolvent or financially embarrassed is not ground for setting aside the conveyance. The owner of property, although he is greatly indebted or even insolvent, may sell it and give good title to a bona. fide purchaser, despite his creditors, up to the time when they shall have acquired a lien."

See, also, Chesher v. Shafter Lake Clay Co., supra, and Field v. Otero, 32 N.M. 338, 255 P. 785.

There actually was no satisfactory proof of the daughter's insolvency at time of the conveyance beyond the mother's testimony that she knew of no other property owned by the daughter besides this real estate; that if there was other property elsewhere she knew nothing about it. That, plus testimony that the daughter was pressed for payment of some bills, especially a sizeable doctor's bill, is all the proof on the question of insolvency. The record is cloudy as to just what extent the mother was familiar with the daughter's financial condition. At one point the mother testified her daughter did not confide in her as to financial affairs after the daughter's drinking began, a time after her divorce. At another point the mother testified on cross-examination and as the result of considerable effort on the part of counsel, that when the daughter was with her for some time prior to the conveyance in 1951 (when the daughter was not drinking), that she had a general knowledge of all the daughter's financial affairs. We think the most that can be made of this is that the mother might have had general knowledge of the daughter's financial affairs at the material time, but, even so, she still did not testify the daughter was, to her knowledge, insolvent; her testimony as to the assets of the daughter was always lim-

ited by a qualification that that was all she knew about. It falls far short of establishing fraud in a case of this kind by clear, strong and convincing evidence.

As a matter of fact, the plaintiff was hard put in furnishing proof to support the allegations of his complaint. He was compelled to call the mother as an adverse party, as well as her son, and to rely solely upon their testimony, aside from any probative effect to be properly deduced from the so-called badges of fraud, to make out his case. A principal actor in the transaction sought to be impeached, Mrs. McPhee, neither appeared nor testified in the case at all, personally or by deposition. Neither did the plaintiff, himself, the actual creditor about to be defrauded, according to the complaint, attach enough importance to the suit to put in his appearance and testify in person, or tender his deposition as evidence in the case.

The daughter was an alcoholic. She had been married and upon a settlement incident to divorce in California had received $35,000 in cash. A substantial part of it was lost in a swindle perpetrated on her in Arizona. She had been placed under guardianship at one time by reason of dissolute handling and managing of her affairs, though no question of guardianship enters into this case. Her unfortunate drinking habit and dissolute spending explains, short of any implication of fraud, why the mother was unwilling to turn over the entire purchase price of the lots at once but rather, according to their argument, as the daughter needed it for her support.

Counsel for the defendants, the mother and daughter, calls attention to an imposing array of facts challenging the implications of fraud in the conveyance under attack. He mentions the undisputed fact that there was a full and adequate consideration for the conveyance, namely, $4,000 the exact amount paid for the property by the daughter. Thus, the conveyance was not voluntary. Nor was there the slightest secrecy or concealment about it. It was placed immediately on record. The daughter delivered immediate possession and control of the property to her mother incident to the transfer with delivery of the deed and retained no beneficial right or interest in the lots.

Furthermore, following the deed, the mother has assumed and paid all tax obligations levied against the property. The court did not find that at the time she accepted the deed the mother knew anything about the claim of indebtedness being made by the plaintiff and the implication from the findings is to the contrary. Indeed, the first implication of fraud with which the findings connect the mother is the knowledge gained by her from the notice of publication in this suit which the son

saw in an issue of the New Mexican and immediately forwarded to his mother. Every indication is that she was shocked and surprised at the news. She immediately engaged counsel to represent her and made preparations to defend against the charges contained in the complaint filed.

■ It is true enough that a defendant or party, under our Rules of Civil Procedure, may now call and interrogate a hostile witness or an adverse party without yielding the right to impeach such witness. Nevertheless, this does not mean that unfavorable testimony of an adverse party so called which bears the impress of truth and is undisputed and uncontradicted may be ignored.

■ In its findings the trial court seemed to attach some significance to the fact that no written contract, note or mortgage, was executed by the daughter or mother in connection with the transfer and looked upon this omission as a badge of fraud. It was proper, of course, to consider this circumstance for whatever it was worth. The fact is, however, this was the first and only business transaction which ever took place between the two. The close relationship existing between them would certainly dispel any thought on the daughter's part that her mother might not fulfill her promise to pay, as

the proof showed abundantly she did so.

As held by the Supreme Court of the United States in Schreyer v. Scott, 134 U.S. 405, 10 S.Ct. 579, 33 L.Ed. 955, involving a transaction between husband and wife, it would be unusual for relatives so close to go through the formality of dealing with each other at arm's length. And such carelessness in dealings between them, not only should not ordinarily be accepted as a badge of fraud but, contrarily, would appear to be the natural result of the relationship and calculated to prove the honesty of their dealings. In this same case the court touched on the credibility to be given their testimony and remarked that if it was to be deemed worthless and rejected, then there was practically no testimony interpreting the transaction and that the court should never presume fraud.

This observation is not altogether unlike one delivered by this court in territorial days in First National Bank of Albuquerque v. Lesser, 10 N.M. 700, 65 P. 179, 180, where the court, speaking through the late Justice Parker, said:

> "Not a single fact appears which points unequivocally to concealment, or which may not as well be accounted for in consonance with honesty as with dishonesty."

See, also, Shaw v. Board of Education, 38 N.M. 298, 31 P.2d 993, 93 A.L.R. 432,

and Ortega v. Ortega, 33 N.M. 605, 273 P. 925, to same effect. Indeed, the remarks of the trial court in the Lesser case just quoted from seem peculiarly applicable to the facts in this case.

The trial court's decisive finding on which the entire judgment rests, is No. 11 reading:

"The transaction between the Defendant McPhee and the Defendant Angier including the conveyance was entered into by the Defendant McPhee for the purpose and with the intent of hindering, delaying and defrauding her creditors, including this plaintiff, and preventing him from obtaining his lawful demands."

In concluding as we do that there is not here that clear, strong and convincing evidence necessary to support the finding of fraud carried in the 11th paragraph of the trial court's findings, quoted next above, we neither ignore nor disregard the well established rule that we are bound by the trial court's findings where established by substantial evidence. Authorities in support of this proposition could be cited in such number as to fill a small volume of the reports. The question always remains, however, what is the test of substance in the evidence? Ordinarily, the evidence is deemed substantial if it tips the scales in favor of the party on whom rests the burden of proof, even though it *barely* tips them. He is then said to have established his case by a preponderance of the evidence. A finding in his favor on the decisive issue is thus said to be supported by substantial evidence.

Not so, where fraud is charged. The evidence in support of a finding of fraud is not deemed substantial, *if it is not clear, strong and convincing*. First National Bank v. Lesser, supra; Shaw v. Board of Education, supra; Frear v. Roberts, 51 N.M. 137, 179 P.2d 998; and where it is evenly balanced or *barely* tips the scales in a party's favor, that is, *barely* preponderates, it is not so supported. When all the evidence is in, fraud being the issue, or fraudulent intent to bring it down to the present case, if the greatest effect it has on the mind of the fact finder is to leave it confronted by a question mark on the vital issue, was there fraud? —then there is not that type of evidence which alone is to be deemed substantial and a finding of fraud cannot be supported.

On the other hand, if, when the evidence is all in the scales, they tilt instantly to the affirmative of the issue of fraud charged; if, the balancing of the scales proclaims an affirmative in unmistakable tones, leaving in the fact finder's mind an abiding conviction that the charge

made is true, then such evidence may with all propriety be called clear, strong and convincing and it is substantial.

We have read and re-read the record in this case with painstaking care and must announce it as our considered judgment that the testimony upon which the court relied to find fraud in the transaction on either the mother's or the daughter's part falls far short of that clear, strong and convincing type of evidence upon which alone the court should presume to strike down, set aside and hold for naught a formal deed of conveyance. At the close of the plaintiff's case in overruling a motion to dismiss the trial court observed, nevertheless, that he could not see much "muscle" in the plaintiff's case up to that point. We agree with him in that observation and add it is our settled opinion that a state of atrophy afflicted whatever "muscle" there was in plaintiff's case from that point on.

It follows from what has been said that the judgment reviewed should be reversed and the cause remanded with a direction to the trial court to set aside its judgment and dismiss the plaintiff's cause of action. The plaintiff will pay the costs of the appeal.

It is so ordered.

COMPTON, Chief Justice, and LUJAN, McGHEE and KIKER, JJ., concur.